CHAUNCEY PERRY, Appellant, *v.* THE LORILLARD FIRE INSUR-
ANCE COMPANY, Respondent.

Where a policy of fire insurance contains a provision declaring it void in
case of a sale, transfer or change in the title of the property, voluntary
or by legal process or judicial decree, an adjudication of bankruptcy in
involuntary proceedings against the insured, and an assignment by the
register under and in pursuance of the bankrupt act (§ 14, 16 U. S. Stat.
at Large, 517), is a transfer and change of title by judicial decree within
the meaning of the provision, and vitiates the policy.

*Starkweather* v. *Cleveland* (2 Abb. [U. S.], 67) distinguished.

The effect of such transfer is not changed by the fact that, by the terms of
the policy, the loss is made payable to another who is a mortgagee of the
property, as it is not his interest as mortgagee which is insured.

(Argued May 25, 1874; decided September term, 1874.)

APPEAL from judgment of the General Term of the
Supreme Court in the fourth judicial department, entered
upon an order denying a motion for a new trial, and direct-
ing judgment on an order nonsuiting plaintiff upon trial at
Circuit. (Reported below, 6 Lans., 201.)

This action was brought upon a policy of fire insurance
issued by defendant. The policy was upon a dwelling-house
in the city of Rochester, which was insured for one year, to
the amount of $2,000. The policy issued to James Cochrane,
then the owner of the dwelling; it bore date the 14th day of
December, 1869. On the face beneath the clause effecting
the insurance was written: "Loss, if any, pay Chauncy
Perry" (the plaintiff), who, at that time, held a mortgage
on the property insured, exceeding the amount of insurance.
The policy contained this provision or condition: "If the
property (insured) shall be sold or transferred, or any change
take place in title or possession, whether by legal process or
judicial decree, or voluntary transfer or conveyance," then
"this policy shall be void." The fire occurred on the 23d
day of May, 1870, damaging the property beyond the amount
of the insurance (Cochrane being then, and up to the time

of the trial, on February 28, 1871, in possession thereof) Previous to that time · involuntary and compulsory bankruptcy proceedings were commenced against the said Cochrane, which resulted in an adjudication made on the 1st day of April, 1870, declaring and adjudging him a bankrupt, and the register in bankruptcy, on the 30th day of April, 1870, by virtue of the bankrupt act, conveyed and assigned to the assignee, selected by the creditors, all the estate, real and personal, of the said bankrupt, including all the property, of whatever kind, of which he was then possessed, or in which he was interested or entitled to have on the 26th day of January, 1870 (the time when the bankruptcy proceedings were commenced), with all his deeds, books and papers relating thereto, excepting such property (not including that in question) as was exempted from the operation of the assignment by the provisions of the fourteenth section of the said act. It was admitted on the trial that the proceedings in the court of bankruptcy were regular so far that the court acquired jurisdiction of the person and estate of Cochrane.

At the close of the evidence the defendant's counsel moved for a nonsuit, on the ground that the involuntary proceedings in bankruptcy produced such a change of title in the property insured as to render the policy void by the terms thereof. The motion was granted, and an exception taken thereto was ordered to be heard in the first instance at General Term.

*Geo. F. Danforth* for the appellant. The words of the condition as to sale or transfer or change of title entail a forfeiture and must be strictly construed. (15 J. R., 276; 2 Wils., 234; *Hoffman* v. *Ins. Co.*, 32 N. Y., 403.) A change caused by an adjudication in bankruptcy is not within the condition of the policy. (Bac. Abr., Sheriffs, *m.;* 2 How. [U. S.], 256, 257; Gen. R. R. Law of 1850, § 10; *Wadham* v. *Marlow*, 2 Chit., 607.) Neither the adjudication in bankruptcy nor the subsequent proceedings effected any change in the title to or possession of the property insured. (2 Pars. on Con., 672, 380, 488; *Ont. Bk.* v. *Mumford*, 2 Barb. Ch.,

596 ; 4 Nat. Bk. Reg., 110; Phil. Ins., 107; *Copeland* v. *Stevens*, 1 B. & A., 592; 17 Wall., 481.) Notwithstanding the adjudication and proceedings in bankruptcy, Cochrane still had an interest in the policy. (*Charman* v. *Charman*, 14 Ves., 580; *In re Hoyt*, 3 Bk. Reg., 13; *Hitchcock* v. *N. W. Ins. Co.*, 26 N. Y., 68, 69; *Wilson* v. *Hill*, 3 Metc., 70; *Strong* v. *Manf. Ins. Co.*, 10 Pick., 40; *Adams* v. *Rock. Mut. Ins. Co.*, 29 Me., 292; *Kitts* v. *Massasoit Ins. Co.*, 56 Barb., 183; *Phelps* v. *Gib. F. Ins. Co.*, 9 Bosw., 404; *Waring* v. *Loder*, 53 N. Y., 581.)

*James B. Perkins* for the respondent. The policy became void upon the adjudication of Cochrane as a bankrupt, or at least upon the assignment to the assignee. (*Savage* v. *How. Ins. Co.*, 52 N. Y., 502; Ang. & Ames on Ins., 237; *Adams* v. *Rock. Mut. Ins. Co.*, 29 Me., 292.) Plaintiff stands in the same position with Cochrane, and cannot recover when the latter could not. (*Grosvenor* v. *At. F. Ins. Co.*, 17 N. Y., 391.)

Lott, Ch. C. The act of Congress entitled "An act to establish a uniform system of bankruptcy throughout the United States," approved March 2, 1867 (U. S. Statutes at Large, vol. 14, p. 517), by section 14 thereof, declares that as soon as an assignee in bankruptcy is appointed and has qualified, the judge of the court of bankruptcy, or, where there is no opposing interest, the register in bankruptcy, shall, by an instrument under his hand, assign and convey to the assignee all the estate, real and personal, of the bankrupt, with all his books and papers relating thereto; that such assignment shall relate back to the commencement of the proceedings in bankruptcy, and that thereupon, by operation of law, the title to all such property and estate, both real and personal (except certain property exempted from its operation not embracing or including that in question), shall vest in the said assignee. It then further declares as follows: " All the property conveyed by the bankrupt in fraud of his cred-

itors, all rights in equity, choses in action, patents and patent rights and copyrights, all debts due him or any person for his use, and all liens and securities therefor, and all his rights of action for property or estate, real or personal, and for any cause of action which the bankrupt had against any person arising from contract or from the unlawful taking or detention, or for injury to the property of the bankrupt, and all rights of redeeming such property or estate, with the like right, power, title and authority to sell, manage, dispose of, sue for and recover or defend the same, as the bankrupt might or could have had if no assignment had been made, shall, in virtue of the adjudication in bankruptcy and the appointment of his assignee, be at once vested in such assignee."

The bankrupt, Cochrane, at the time of the adjudication of the court of bankruptcy declaring him to be such, and at the time of the assignment by the register in bankruptcy, under and in pursuance of the above mentioned provision, to the assignee appointed by him, owned and was in possession of the dwelling-house insured and covered by the defendant's policy, and it, by the assignment, passed to the said assignee, subject to the plaintiff's mortgage. The policy, after insuring the property, declared on its face that the loss, if any, was payable to the said plaintiff; and his interest, *as mortgagee,* was not specifically insured. He therefore stood in the same relation to the defendant as Cochrane, the insured, did, and his rights were subject to all the conditions and provisions contained in the policy, to the same extent as if the clause declaring the loss, if any, to be payable to him, had not been inserted. (See *Grosvenor* v. *The Atlantic Fire Insurance Company,* 17 N. Y.; 391.) One of those conditions and provisions was, that if the insured property should be sold or transferred, or any change take place in title or possession, whether by *legal process or judicial decree,* or voluntary transfer or conveyance, then, and in every such case, the policy should *be void.* The question is then presented, whether the policy in question had become void at the time the fire occurred — which was on the 23d of May,

1870 — more than a month after Cochrane, the assured, was adjudged to be a bankrupt, and twenty-three days after the date and execution of the said assignment by the register to the assignee in bankruptcy. There can be no doubt that Cochrane had then ceased to be the owner of the premises, and that there had been a transfer and change of title effected by the bankrupt proceedings, although he himself had not made a sale or voluntary transfer or conveyance thereof. Is the transfer and change of title so made a violation of the condition or provision of the policy above referred to? I cannot doubt that it is. The bankrupt act above referred to declared the several District Courts of the United States to be "constituted courts of bankruptcy," with original jurisdiction in their respective districts, in all matters and proceedings in bankruptcy; and they were thereby "authorized to hear and adjudicate upon the same," according to the provisions of the said act. The policy in question was issued after that act took effect; and the language used is sufficiently broad and comprehensive to include a transfer and change of title by or under a decree of a court of bankruptcy. It not only declares that if the property insured shall be sold or transferred, but also that if " *any change take place in title* " or possession, " whether by legal process or *judicial decree*, or voluntary transfer or conveyance," then, and in every such case, the policy shall be void. The adjudication of the court of bankruptcy, adjudging and declaring Cochrane a bankrupt was a judicial decree, and the bankrupt act declared that all his property was, " *in virtue of the adjudication of bankruptcy, and the appointment of his assignee, at once vested in such assignee,*" and it further declared that a copy, duly certified by the clerk of the court, under the seal thereof, of the assignment made by the judge or register, as the case might be, to him as assignee, should be *conclusive evidence of his title* as such assignee, to *take, hold,* sue for and recover the property of the bankrupt. These provisions clearly show that there was a *transfer and change of title* to the dwelling-house insured

by the policy, under and by virtue of such adjudication. There is no ground for saying, as is claimed by the appellant's counsel, that the words "judicial decree" used in the policy have a "technical meaning." He says, using his own language, that "they express a judgment in a court of equity, and were so used in the policy, referring, undoubtedly, to some proceedings the result of which was a decree acting upon property direct, as by direction to convey or to enforce a mechanic's lien, or vendor's lien, or foreclosure of a mortgage." There is no authority or reason for such a limitation. The terms are general, and not in any manner restricted to a decree of any particular court or tribunal competent to render a judgment or decree, which, in its effect, or by its results, operates as a transfer, or change of title. They were used in contradistinction to "a voluntary transfer or conveyance," which is also specially mentioned as a means of effecting a change of title, and, by construction of the courts, has been held not to extend and apply to a transfer of title by operation of law, and consequently was not considered to be a violation of the covenant against alienation in policies of insurance and leases containing them. Judgments of a court of equity, which the counsel concedes to be within the terms, do not, *per se*, so effectually transfer the title to the property affected thereby as the adjudication in bankruptcy does, by virtue of the provisions of the bankrupt act herein above particularly referred to. They are the foundation and authority for executing conveyances, as prescribed and directed thereby and it is clear that an alienation by or through a judgment or decree of any and every competent act was prohibited, and that it was intended to declare that such an alienation of the property insured, as well as that by a conveyance executed by the owner himself, should render the policy void. Such is the fair and proper construction of the terms used to express the intention of the parties, with the view and object, unquestionably, of declaring that a change of title by operation of law in the cases designated, as well as voluntary conveyances, should be a violation of the covenant against

alienation in the policy and render it void; and, as the counsel of the respondent well says, to hold that the title has not been changed by the decree in bankruptcy, is to nullify the agreement of the parties, which is to be construed and have the same effect when expressed in a policy of insurance as in any other instrument. (See *Savage* v. *Howard Ins Co.*, 52 N. Y., 502.)

The case of *Starkweather* v. *Cleveland Ins. Co.* (2 Abb. [U. S.], 67), decided by the District Court of the northern district of Ohio, is not inconsistent with the views above expressed, in relation to the covenant and its effect, but in perfect and entire harmony therewith. By a reference to the facts therein, it appears that the covenant against alienation contained in the policy, there in question, was in these words: " If the title to the property is transferred or changed, this policy shall be void." No mention is made as to the manner of effecting such transfer. And SHERMAN, J., in his opinion, says that " the covenant against the change or transfer of title in different policies varies somewhat in phraseology. In some policies the language used is 'sold or conveyed in whole or in part,' in others ' shall not be alienated by sale or otherwise,' or as in this, 'the title shall not be changed or transferred.'" He adds, " all these expressions are in substance the same. * * * These covenants, therefore, on the part of the assured, are that he will not assign the policy or in any manner change his title to, or the ownership of the property insured." This last remark clearly shows that he considered and construed the covenant, then the subject of consideration, to be limited and restricted to a transfer or change of title by the *assured himself*, and not to extend to or include a change of title by mere operation of law. This is more fully shown by what he subsequently says. After a review of certain cases cited by him, upon the effect of an involuntary act of bankruptcy upon the breaches of covenant in insurance, and other like contracts, he concludes as follows: " On these authorities, it seems clear to me that the clauses in this policy forbidding its assignment and the change

and transfer of the title to the property have no more effect
than similar words in leases. Both are contracts between
two persons, with this difference, that leases are under seal
and therefore of a higher nature." The authorities referred
to by him, related to general covenants against alienation,
construed to be limited in their effect to a *voluntary alienation*
by the parties themselves, and none of them appear to have
extended the covenant, as the policy now the subject of
consideration does, to a transfer or change of title, " by legal
process or judicial decree," and not limiting it to a " voluntary
transfer or conveyance." The difference in the terms of the
covenant in the case of *Starkweather* v. *Cleveland Ins. Co.*
from that in this, shows that it cannot be considered as an
authority against the construction given by me to the covenant
in question. The learned judge in that case also advances
the doctrine (not necessary to the decision made by him,
as above stated, as to the meaning of the policy) that
the assignee, in cases of involuntary bankruptcy, had " the
mere control of the bankrupt's property, as the agent of the
law, to sell the same and pay his debts," saying " that the law
does not give to, or vest in, him the absolute ownership in
his own right to the property. He is a mere trustee, account-
able under the law to the *cestui que trust.* He holds the
property assigned to him in trust of all leases and policies,
as well as other property," and claims that the property,
notwithstanding the adjudication adjudging him a bankrupt,
and the assignment of his property by the register in bank-
ruptcy, is still, in law, the bankrupt's property, but by opera-
tion of law, in the hands of the assignee, for the sole purpose
of selling and applying the proceeds for the bankrupt's benefit.
I concede that the property does not become vested in the
assignee, as his *own individual property*, to be held by him
in *his own right* and for his personal use and benefit, and that it
is held by him *in trust*, but for the benefit, *primarily, of the
bankrupt's creditors*, and so far for his use in the payment of
his debts. I, however, do not agree with him that the *title*
to the property does not become *vested* in the assignee, but

on the contrary, as I have shown, the *title* thereto, and not the mere *control* thereof, is, by the clear and unequivocal language of the bankrupt act, to which reference has hereinbefore been particularly made, declared to be vested in the assignee.   He becomes the *owner* thereof in trust, I admit, for the purposes declared in the said act, but, nevertheless, *the owner*, and does not stand in the mere relation of *agent* for the bankrupt who, both in fact and law, has, by the proceedings, become divested of the legal title.

It follows, from the views above expressed, that the judgment appealed from should be affirmed, with costs.

All concur.

Judgment affirmed.