# CASES DETERMINED

AT THE

## January Term, 1879.

---

THE APPLETON IRON COMPANY and others vs. THE BRITISH
AMERICA ASSURANCE COMPANY.

INSURANCE AGAINST FIRE: FORFEITURE: MORTGAGED CHATTELS:
RIGHTS OF MORTGAGOR AND MORTGAGEE. *(1) General rule as to
forfeitures. (2) Title and right of possession to mortgaged chattels.
(3) Insurable interests of mortgagor and mortgagee. (4) When title
to policy in mortgagee. (5) Forfeiture for involuntary change of title:
whether valid. (6) Waiver of forfeiture.*

1. When a forfeiture of an insurance policy is alleged on merely technical
grounds, not going to the risk, the contract of insurance will be upheld,
if it can be without violating any principle of law.

2. It is the settled law of this state that the mortgagee of *chattels* has the legal
title to the property before the debt is due, and that he may take imme-
diate possession thereof, unless by express stipulation the mortgagor is
permitted to retain possession.

3. Both mortgagor and mortgagee of chattels have insurable interests therein;
and a provision in a policy of insurance issued to the mortgagor, by
which any loss is payable to the mortgagee as his interest may appear, is
valid.

4. Where the interest of mortgagees in insured chattels exceeded the insur-
ance, and, by the terms of the policy (taken by the mortgagor), the
amount of any loss would become payable to the mortgagees, the legal
title to the policy, as well as to the chattels, was in the mortgagees, and
the mortgagor could not (by a general assignment in bankruptcy or
otherwise) transfer the title to either, so as to give effect to a clause in
the policy which provided that if any change should take place in the
title to the chattels, by legal process, judicial decree or voluntary trans-

fer or conveyance, or if the policy should be assigned before a loss, without the insurer's consent indorsed thereon, it should be void.

[5. Whether such a provision for forfeiture of insurance as that above stated is not void as against public policy, *quære*.]

[6. Upon such forfeiture being incurred, the policy is voidable only, at the election of the insurer; and the forfeiture may be *waived* by laches of the insurer misleading persons interested in the policy to their prejudice. And in this case, if, by any act of the mortgagor, a forfeiture had been incurred on which the insurer meant to rely, good faith would have required it to notify the mortgagees, to give them an opportunity to protect themselves by other insurance.]

APPEAL from the Circuit Court for *Winnebago* County. The complaint alleges, in substance, that on the 28th of June, 1876, defendant, in consideration of a certain premium paid to it by the *Appleton Iron Company,* one of the plaintiffs, issued to that company a policy insuring it against loss by fire, to the amount of $3,260, on certain lots of wood in Outagamie county; that by said policy defendant agreed to pay the plaintiffs *Donkersly, Smith* and *Smith* the moneys which should become payable upon any loss, to the extent of the interest of said plaintiffs in the property; that, during the life of the policy, property covered thereby was destroyed by fire, to the value of $4,421; that the *Iron Company* duly performed all the conditions of the contract on its part; that, at the time of said fire, said *Donkersly, Smith* and *Smith* had a valid interest in the property destroyed, by virtue of a mortgage thereon executed to them by the *Iron Company,* to an amount exceeding that of the insurance; and that defendant has made default in payment, etc., and is indebted to plaintiffs, by reason of the premises, in the sum of $1,200, with interest, for which judgment is demanded.

The policy contains the following condition: "That if the property insured be sold or transferred, or if any change takes place in the title or possession, whether by legal process or judicial decree, or voluntary transfer or conveyance, then in every such case said policy shall be void." There was also a

provision that if the policy should be assigned before loss, without the consent of the insurance company indorsed thereon, it should be void. The answer alleges that, before the loss occurred, the *Iron Company* was, on its own petition, adjudicated a bankrupt by the proper federal court; that, pursuant to the terms of the bankrupt law and in accordance with a resolution of the creditors, a trustee was appointed to hold and distribute the estate; and that the bankrupt, "by order of said court, did, by deed of assignment in writing, duly convey, transfer and deliver all the property and effects (including the property in said policy described)" to the trustee, to be applied for the benefit of the creditors of the bankrupt. It is further alleged that the trustee accepted the trust; that, "by virtue of said assignment or conveyance and the proceedings under said act, the title to said property became vested" in the trustee, and so remained at the time of the fire; that the transfer of the property to him was without the knowledge of the defendant or its consent indorsed upon the policy; and that defendant had never ratified such alienation, or waived the forfeiture thereby created. It is further alleged that the policy sued upon "was specifically described in said petition in bankruptcy, and was mentioned in said petition as part of the estate and assets" of the bankrupt; and that, by virtue of the assignment and the proceedings under the bankrupt act, "the property and effects of the bankrupt, *and the policy* . . . became and were assigned to, and the title thereto became and was vested in," said trustee, and so remained at the time of the fire. It is also alleged that the bankruptcy proceedings are still in force.

Plaintiffs demurred to the answer as not stating a defense; and defendant appealed from an order sustaining the demurrer.

For the appellants, there was a brief by *Finch & Barber*, and oral argument by *Mr. Barber:*

1. Under the conditions of the policy, the alienation of the property before the loss avoided the contract. *Keeler v. Ins.*

*Co.*, 16 Wis., 523; *Hinman v. Ins. Co.*, 36 id., 164. In the case of a trustee created under the bankrupt act, the title to the property vested in him is the same in all respects as the title vested in an assignee appointed in bankruptcy proceedings *(Re Williams*, 2 Bank. R., 229); and in case of such an assignee, title to all the bankrupt's property vested in him by operation of law. R. S. of U. S., § 5044, and cases cited in marginal note thereto. The adjudication in bankruptcy, and the assignment of the property to the trustee, constituted, therefore, a transfer and change of title both by voluntary transfer and by judicial decree, within the meaning of the policy, and avoided it. *Perry v. Ins. Co.*, 6 Lans., 201; *S. C.*, 61 N. Y., 214, and 5 Bennett's F. Ins. Cases, 597; *Adams v. Ins. Co.*, 29 Me., 292, and 3 Bennett's Cases, 30; A. & A. on Ins., 237; May on Ins., 289; Flanders on Ins., 479, and note; *Young v. Ins. Co.*, 14 Gray, 150, and 4 Bennett's Cases, 417; *Hazard v. Ins. Co.*, 7 R. I., 429; *Reynolds v. Ins. Co.*, 34 Md., 280; Wood on Ins., § 316. 2. If the *Iron Company* had no insurable interest in the property when the loss occurred, there can be no recovery (Wood on Ins., § 250; *Fowler v. Ins. Co.*, 26 N. Y., 422; *Sweeny v. Ins. Co.*, 20 Pa. St., 337, 342; *Sawyer v. Ins. Co.*, 37 Wis., 504); a distinct averment of such interest in the complaint is necessary *(Fowler v. Ins. Co.*, 26 N. Y., 423; *Lane v. Ins. Co.*, 12 Me., 44; *Freeman v. Ins. Co.*, 14 Abb. Pr., 398; *S. C.*, 38 Barb., 247; *Williams v. Ins. Co.*, 9 How. Pr., 365; Wait's Code, 13); and for want of such an averment the complaint here fails to state a cause of action. But the answer shows that the *Iron Company* had no insurable interest at the date of the loss; for whatever interest that company previously had, whether it was a legal or only an equitable interest, had passed by virtue of the assignment to the trustee in bankruptcy. A mortgagor of chattels, even after condition broken, has an interest in the property, which he may assign, and which his creditors may reach. *Frisbee v. Langworthy*, 11 Wis., 375; *Cotton v. Watkins*, 6

id., 629, and case cited in note. No change of possession of the property was necessary to effect a change of the title to such interest; but if it were, under the averments of the complaint, such change of possession must be presumed, on demurrer. True, if, after the debts shall be paid in full, there shall be any *residue* of the property, it will be reässigned to the bankrupt; but the court will not presume that there will be such a residue. Unless the existence of a surplus appears affirmatively, courts invariably hold that this bare contingent interest of the bankrupt is not insurable. *Lazarus v. Ins. Co.*, 5 Pick., 76; *Hodgson v. Glover*, 6 East, 316; *Eyre v. Glover*, 16 id., 218. 3. The assignment of the *policy* to the trustee, in violation of the condition, forfeited it. R. S. of U. S., § 5044; Flanders on Ins., 481; Wood on Ins., § 341; May on Ins., 456–7; *Sadlers' Co. v. Badcock*, 2 Atk., 554; *Smith v. Ins. Co.*, 1 Hill, 497; *Dey v. Ins. Co.*, 23 Barb., 623; *Ferree v. Ins. Co.*, 67 Pa. St., 373. 4. If the *Iron Company* cannot recover, the other plaintiffs, claiming only as mortgagees, are in no better position. *Grosvenor v. Ins. Co.*, 17 N. Y., 391; *Perry v. Ins. Co.*, 61 id., 217; *Loring v. Ins. Co.*, 8 Gray, 28; *Young v. Ins. Co.*, 14 id., 150; *Pupke v. Ins. Co.*, 17 Wis., 381, 392; Wood on Ins., §§. 342, 506.

*Chas. W. Felker*, for the respondents, argued that the condition of the policy relied upon by defendant must be strictly construed, both because inserted by defendant itself (*Western Ins. Co. v. Cropper*, 32 Pa. St., 351; *Ins. Cos. v. Wright*, 1 Wall., 468; May on Ins., 182; 5 Ben. F. I. Cas., 328), and because it provides for a forfeiture (30 Wis., 540); that, so construed, there had been no sale or transfer of the property within the meaning of its terms (1 Phill. on Ins., § 107; 2 Parsons on Con., 451; *Starkweather v. Ins. Co.*, 5 Ben. F. I. Cas.; 328; *Bragg v. Ins. Co.*, 5 Foster, 289); that the words "legal process" in the policy must be understood of the usual and ordinary writs, used, according to the course of the common law, for transferring title or possession *in*

*invitum;* that neither those words nor the words "judicial decree" have any relevancy to an order made by a register in bankruptcy or a judge sitting in bankruptcy (Burrill's and Bouvier's Law Dics., title "Decree"); that, on the other hand, the making of a deed of assignment by the bankrupt in pursuance of such an order is not a *voluntary* assignment, even where the petition in bankruptcy is a voluntary act.   2. He further argued that the legal title to the wood in question, with the right of possession, was in the mortgagees *(Byron v. May*, 2 Chand., 103; *Cotton v. Marsh,* 3 Wis., 221; *Frisbee v. Langworthy*, 11 id., 375; *Cotton v. Watkins*, 6 id., 629; *Wilson v. Gray*, 2 Stockt., 323; *Butler v. Miller*, 1 N. Y., 496–500; *Fox v. Burns*, 12 Barb., 677–8; Hilliard on Mort., 314, sec. 3); that such title therefore did not pass by the assignment in bankruptcy; and that the answer does not claim that the trustee ever went into possession, and there is no presumption that he did so, as he had no right to the possession as against the mortgagees.   3. There was no forfeiture by reason of an assignment of the policy.   (1) Construing strictly against the insurer, the provision of the policy as to such an assignment does not apply to an assignment to a trustee for the benefit of creditors.   (2) It is extremely doubtful whether a mere contract for an indemnity (such as a policy of insurance is) will pass under a mere general assignment. *People v. Duncan,* 41 Cal., 507; *Re Ely*, 1 N. Y. Leg. Obs., 131; 10 Johns., 63; id., 289.   (3) The agreement in the instrument that any loss should be paid to the mortgagees to the extent of their interest, was an assignment of the policy to them *pro tanto;* and, as it appears from the pleadings that their interest exceeded the insurance, it was an assignment of the whole policy to them.   May on Ins., § 378; *Keeler v. Ins. Co.*, 16 Wis., 550–567, V. & B.'s ed.; 43 Wis., 329–32.   The assignee in bankruptcy takes "such estate only as the bankrupt had a *beneficial* as well as a legal interest in." *Rhoades v. Blackiston*, 106 Mass., 334–6; *Blin v. Pierce*, 20 Vt., 25;

The Appleton Iron Co. and others vs. The British America Assurance Co.

*D'Arnay v. Chesneau,* 13 M. & W., 796–809; *Kip v. Bank,* 10 Johns., 63; *Kennedy v. Strong,* id., 289.

The following opinion was filed at the August term, 1878:

COLE, J. The question is, whether the policy was avoided by the proceedings in bankruptcy and the assignment or transfer made by the bankrupt to the trustee under the order of the district court. The counsel for the defendant insists that it was; that there was a transfer or change of the title of the wood by legal process or judicial decree, within the meaning of the policy.

When considered with reference to the facts in this case, we can give no such effect to the bankrupt proceedings, for this reason. By the terms of the policy, the loss was made payable to the plaintiffs *Smith, Donkersly & Smith,* as their interest should appear. It is admitted that their interest exceeded the amount of the policy. They were the mortgagees of chattels; the whole legal title of the wood was vested in them conditionally, leaving no such interest in the bankrupt as would pass to the trustee under the deed of assignment. It is the settled law of this state, that the mortgagee of chattels has the legal title to the property mortgaged, even before the debt is due, and he may take immediate possession of the property, unless, by express stipulation, the mortgagor is permitted to retain possession. It is unnecessary to refer to the decisions of this court where these principles in regard to chattel mortgages are affirmed or recognized. It is sufficient to say that it is well established that such are the rights of the mortgagee of personal property. Consequently, we think the assignment by the mortgagor to the trustee, under the circumstances stated in the answer, really worked no change in the title or possession of the wood. The title remained in the same persons as before the assignment, and as when the property was insured. The interest of the parties in the same was unchanged, and the insurance company was not released

thereby from its liability to pay the loss. *Bragg v. The New England Mut. Fire Ins. Co.*, 25 N. H., 289. There is a plain ground for discrimination between this case and such cases as *Adams v. The Rockingham M. F. Ins. Co.*, 29 Me., 292; *Young v. Eagle Fire Ins. Co.*, 14 Gray, 150; *Hazard v. Franklin M. F. Ins. Co.*, 7 R. I., 429, and *Perry v. Lorrillard F. Ins. Co.*, 61 N. Y., 214; where it is held that an adjudication in bankruptcy against the insured, and an assignment under the bankrupt law, or an assignment by the insured under proceedings in insolvency, is an alienation or transfer of property within the meaning of such clauses in the policy, and defeats a recovery upon it. In those cases the insurance was upon real estate, and an assignment by the insolvent or bankrupt might well be held to operate as a transfer or change of title. A mortgage of real estate, under the modern doctrine in this country, does not convey the fee to the mortgagee, and in that regard is distinguishable from a mortgage of chattels, which passes the entire legal title conditionally to the mortgagee. It is, therefore, not necessary in this case to deny the correctness of the proposition that a transfer or assignment by a mortgagor of real estate under insolvent or bankrupt proceedings does work a substantial change in the title of the insured property, and put an end to the policy, where it contains a condition similar to the one before us. But here nothing passed by the assignment to the trustee; neither the legal title nor the beneficial interest. It is clear that, had the trustee attempted to interfere with the wood, he would have been a trespasser and liable as such, the deed of assignment affording him no protection.

Of course, the insurance company will not be heard to say that the *Appleton Iron Company* had no insurable interest in the wood when it issued the policy. For it knew that the wood was mortgaged at the time, and agreed to pay the loss to the mortgagees. It is manifest that the insurance was for the benefit of the *Iron Company;* for it

might pay the mortgage debt and become the owner of the wood. At all events, we must assume that when the contract was entered into, all the facts connected with the title were known to the insurance company, and it saw fit to issue the policy with full knowledge of the precise interest which the parties had in the property. Nothing, in fact, has occurred since the policy was issued, which in any way affects the rights of the parties, or has any bearing upon the liability of the company to pay for the loss, except the proceedings in bankruptcy already alluded to. Under these circumstances, we think the defendant is estopped from saying that the *Iron Company* had no insurable interest in the wood when it issued the policy. Such company certainly had an equity of redemption, a right to defeat the title of the mortgagees by performance of the conditions of the mortgage.

There is a still further fact stated in the second defense, upon which considerable stress is laid by defendant's counsel. It is alleged that the policy of insurance was specifically described by the *Iron Company* in its petition in bankruptcy; was mentioned as a part of its estate, and was transferred to the trustee by the deed of assignment. There is a clause in the policy that, if it should be assigned before loss, without the consent of the company indorsed thereon, this should avoid the policy. It is claimed that the deed of assignment transferred the policy, within the meaning of this clause. But we think otherwise. It does not appear that the policy was ever delivered to the trustee, or that there was any actual assignment of it. A general assignment by the bankrupt, under the circumstances, would not have the effect to transfer the policy to the trustee.

We therefore think that the demurrer to the answer was properly sustained.

*By the Court.* — Order affirmed.

A motion by the appellant for a rehearing was denied at the January term, 1879, and the following opinion filed:

RYAN, C. J. If the crafty conditions with which fire insurance companies fence in the rights of the assured, and the subtle arguments which their counsel found upon them, were always to prevail, these corporations would be reduced almost to the single function of receiving premiums for little or no risk.

Forfeitures are not encouraged in the law. When forfeitures of insurance policies rest on substantial grounds, going to the risk, this court will uphold them. *Fuller v. Ins. Co.*, 36 Wis., 599. But when forfeitures are alleged on purely technical grounds, not going to the risk, the rule is universal, that the contract of insurance is to be upheld, if it can be without violation of any principle of law.

Here the forfeiture claimed rests upon an assignment of the insured in bankruptcy of the chattels insured and of the policy. Under the circumstances of this case, the claim is purely technical, having no bearing whatever on the risk.

There are highly respectable authorities holding that an assignment in bankruptcy violates such a clause as that relied on in the policy before the court. But it may still be matter of grave doubt, whether such a clause is not void, as against public policy. It operates as a restraint upon the freedom of judicial procedure, and in restraint of judicial jurisdiction. It operates to extinguish an essential right of property by obedience to judicial decree. It operates to defeat the custody of the law of valuable things in action. It is in conflict with the policy of the law. The court is not prepared to pass upon this question here, and there are other grounds quite sufficient to defeat the forfeiture claimed.

This policy is not a contract between the insurer and the insured only. There is a third party to it, with beneficial interest in it from the beginning; in the circumstances, with the chief or only beneficial interest. The policy makes the loss, if any, payable to the coplaintiffs of the insured, as their mortgage interest might appear. This is not the case of a

loss made generally payable to a third person.   The insurance was upon chattels.   And the policy recognizes that the chattels were mortgaged; that the legal title was in the mortgagee; and that the mortgagor had only an equity of redemption. The rights of both parties were insurable interests.   And the thing, the body of the chattels, was insured for the benefit of both.   The policy operated to cover the mortgagee's interest, through and under the mortgagor, to the extent of the policy. The mortgage debt exceeded the value of the thing insured. And the policy is susceptible of no other honest construction.

It is now contended that nothing was insured except the mortgagor's nominal equity of redemption.   The body of the chattels was insured for the benefit of both mortgagor and mortgagee; the loss payable to them according to their relative rights as mortgagor and mortgagee; the legal title of the mortgagee, and the equity of redemption of the mortgagor.   The premium was paid for this insurance of these interests, in this order; not for a policy of delusion, virtually insuring nothing.   And no party should be tolerated in forcing such a construction of bad faith upon his own contract.

If the mortgagor had power to forfeit the policy, and had forfeited it, it might be that the insurance company had waived the forfeiture, as against the mortgagee.   It is well settled in this court, that upon such forfeitures the policy becomes voidable at the election of the insurance company, not void.   And an insurance company cannot sleep upon its intention to avoid the policy, to the prejudice of the insured. The forfeiture may be waived by laches of the insurance company, misleading persons interested in the policy, to their prejudice.   *Miner v. Ins. Co.*, 27 Wis., 693; *Webster v. Ins. Co.*, 36 Wis., 67; *N. W. M. L. Ins. Co. v. G. Fire Ins. Co.*, 40 Wis., 446; *Gans v. Ins. Co.*, 43 Wis., 108; *Palmer v. Ins. Co.*, 44 Wis., 201.   In this case, if the insurance company had intended to rely upon the alleged forfeiture, good faith would have

The Appleton Iron Co. and others vs. The British America Assurance Co.

required it to notify the mortgagee, to give him an opportunity of protecting himself by other insurance.

But the mortgagor did nothing to violate any of the conditions of the policy, or to forfeit it; perhaps could do nothing. As it is above stated, and is very clearly shown in the opinion on the hearing, the legal title of the chattels insured was in the mortgagee. The policy recognizes this upon its face, by recognizing the mortgage. So far, therefore, as the thing insured is concerned, the mortgagor could transfer no title. He might indeed assign his equity of redemption; but that is not what the policy prohibits. The policy prohibits the sale or transfer of the title or possession of the body of the property insured.

And so it is with the policy also. The legal title of the policy vested, upon its execution, in the mortgagee, as fully as if it had been subsequently assigned to him. *Grosvenor v. Ins. Co.*, 5 Duer, 517; *S. C.*, 17 N. Y., 391; *Ennis v. Ins. Co.*, 3 Bosworth, 516. This is not precisely the view taken in Massachusetts, but is not essentially different. *Barrett v. Fire Ins. Co.*, 7 Cush., 175; *Lowell v. Fire Ins. Co.*, 8 Cush., 127; *Fogg v. Fire Ins. Co.*, 10 Cush., 337; *Hale v. Fire Ins. Co.*, 6 Gray, 169; *Loring v. Ins. Co.*, 8 Gray, 28.

So that, when the policy was delivered to the insured, there was no title, either to the thing insured or to the policy insuring it, which the mortgagor could assign in violation of the restraining clause, which the restraining clause could operate upon. He might perhaps have violated the restraining clause in reference to the possession; but of that there is no question here. His assignment in bankruptcy operated to violate nothing in the policy. The legal title of the thing insured, and of the policy, being in the mortgagee, the restraining clause, so far as it is here in question, could operate upon him only. And he does not appear to have done anything in violation of it.

*By the Court.*— The motion for rehearing is overruled.