## NUSSBAUM et al. v. NORTHERN INS. CO. et al.

*(Circuit Court, S. D. Georgia, W. D.   January 3, 1889.)*

1. INSURANCE—ALIENATION OF PROPERTY—STATUTES—CONSTRUCTION.
    Where the state statute provides that "an alienation of property insured, and a transfer of the policy without the consent of the insurer, voids the insurance, but the hypothecation or creation of a lien thereon does not void it." *held*, that a deed to a creditor, to secure a debt, with reservation of balance, and the right to redeem all by payment, is not such alienation.

2. SAME—CONDITION IN POLICY.
    Where the policy stipulates as follows: "If the property be sold or transferred, or any change takes place in title or possession, the policy shall be void,"—*held* that, in the absence of precise stipulations identifying and forbidding the transaction, the deed pledging the property to secure a debt, coupled with retention of possession by the maker, and the right to sell in usual course of his business, and to redeem entirely by payment, is not such change of title as will avoid the insurance.

3. SAME—INSURABLE INTEREST.
    Where the destruction of the property pledged to secure a debt would leave the debt still unpaid, the debtor in possession of the property pledged has an insurable interest therein, and the measure of his loss would be the value of the property burned, and which otherwise would have gone to reduce his indebtedness.

*(Syllabus by the Court.)*

At Law.

Actions upon insurance policies, by M. Nussbaum & Co. against the Northern Insurance Company of London and Aberdeen and others.

*Bacon & Rutherford* and *Hill & Harris*, for plaintiffs.

*Lyon & Estes* and *Du Pont Guerry*, for defendants.

SPEER, J.   The plaintiff has brought seven actions upon as many insurance policies against the companies issuing them.   The actions are on trial (the issues in each case being the same) before the same jury.   Before submitting evidence, the plaintiff has made a motion to strike certain pleas of the defendants, which are as follows:

"And for further plea the defendants say they are not indebted, etc., because the insured, Fried & Hecht, without the consent of defendants, alienated the property insured on the 27th day of November, 1886; for that on that day the said Fried & Hecht signed, sealed, and delivered to M. Nussbaum & Co. a deed, a copy of which is hereto attached, by which they conveyed to M. Nussbaum & Co. the title to said property, and thereby voided the said policy of insurance."

The plaintiff moves that the third ground of the plea be stricken also, because, as therein stated, it is, conditioned in the policy that, if any change takes place in the title of the property insured without the consent of the defendant, "whether by sale, transfer, or conveyance," said policy shall be void, and that such change in the title did take place by the deed before mentioned.   The deed referred to is set out in full as an exhibit to the plea, and is in the following language:

"*State of Georgia, Bibb County.*   This indenture, made the 27th day of November, 1886, between Fried & Hecht, a firm composed of Joseph Fried and Robert Hecht, of the county of Bibb, of the one part, and M. Nussbaum

& Co., a firm composed of M. Nussbaum and Jacob R. Fried, of the county of Bibb, of the other part: Witnesseth that the said Fried & Hecht, for and in consideration of the sum of eight thousand dollars in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, have granted, bargained, sold, aliened, conveyed, and confirmed, and by these presents do grant, bargain, sell, alien, convey, and confirm, unto the said M. Nussbaum & Co., their heirs and assigns, all that stock of merchandise contained in the store-house Number 103 Cherry street, in the city of Macon, said state and county, now occupied by said Fried & Hecht, said stock of merchandise consisting principally of fancy goods, crockery, glassware, tinware, wood and willow ware, notions, toys, etc., and every other species of personal property in said store-house, including furniture and office fixtures; also all property that may be hereafter placed in said store-house, whether differing specifically from said stock now on hand or not, and to which this deed is to attach. This deed is to attach on said stock for what is now due to the said M. Nussbaum & Co., and for all future purchases and advances, and any other indebtedness which may be incurred by said Fried & Hecht. This deed is to follow said stock of goods to any building to which they may be removed; also all notes, books, and accounts now on hand, and all future notes and accounts made by customers of said Fried & Hecht. This conveyance is intended to operate as provided in sections 1969, 1970, and 1971 of the Code of 1882, in regard to the sales of property to secure debts and to pass the title of the property described into the said M. Nussbaum & Co., the debt hereby secured being one note, dated Macon, Ga., November 27, 1886, and due one day after date, for the sum of eight thousand dollars; and the said Fried & Hecht hereby agrees that if the debt to secure which this deed is made is not promptly paid at maturity, according to the tenor and effect of the said note made at the execution hereof, then the said M. Nussbaum & Co., his agent or legal representative, may, and· by these presents are authorized to, sell at public outcry, before the court-house door in the county of Bibb, to the highest bidder for cash, all of said property, or a sufficiency thereof to pay said indebtedness, with the interest thereon, and the expenses of the proceeding, including fees of attorneys, if incurred, not to exceed ten per cent., after advertising the time, place, and terms of sale in the Telegraph, a newspaper published in Macon, Ga., once a week for four weeks; and the said M. Nussbaum & Co., his agent or legal representative, may make to the purchaser or purchasers of said property good and sufficient titles in fee-simple to the same, thereby divesting out of the said Fried & Hecht all right and equity that they may have in and to said property, and vesting the same in the purchaser or purchasers aforesaid. The proceeds of said sale are to be applied, first, to the payment of the said debt and interest, and the expenses of this proceeding; the remainder, if any, paid to the said Fried & Hecht. The said M. Nussbaum & Co., his agent or legal representative, shall be authorized to proceed immediately to put the purchaser or purchasers in possession; the said Fried & Hecht covenanting and agreeing to surrender the same without let or hinderance of any kind.

"In witness whereof, the said Fried & Hecht, and their wives, who hereby consent to the execution of this deed, have hereunto set their hands, and affixed their seals, and delivered these presents, the day and year first above written.                               JOSEPH FRIED.          [L. s.]
                                           "ROBERT HECHT.          [L. s.]
                                           "FRIED & HECHT.        [L. s.]

    "Signed, sealed, and delivered in the presence of
        "T. W. GLOVER.
        "J. T. RODGERS, Not. Pub. Bibb Co., Ga.
    "Recorded, Dec. 1, 1887."

The clause of the insurance policy upon which defendant relies is as follows:

"Or if the property be sold or transferred, or any change take place in title or possession, whether by legal process or judicial decree, or voluntary transfer or conveyance, this policy shall be void, any custom or usage of trade or manufacture to the contrary notwithstanding."

The defendant insists—*First*, that the deed was an alienation of the property insured; *second*, that, even if it should not be such an "alienation" as would void the policy, it is, under the peculiar terms of the policy, such a change in the title, by voluntary transfer and conveyance as will have that effect. The question presented by the motion has been debated by the counsel for either party with unusual clearness, brevity, and precision of statement. It is of vital importance, for if the pleas are sustained the actions will of course be defeated. It will be conducive, perhaps, to logical method, on account of the character of the pleas, to consider first, the argument of defendant's counsel, for in fact they assume the initiative, although formal motion was made by plaintiffs. It is insisted that the deed set out in the plea is a distinct and undeniable violation of section 2807 of the Code of Georgia. This provides that "an alienation of the property insured, and a transfer of the policy, without the consent of the insurer, voids it; but the mere hypothecation of the policy or creating a lien on the property does not void." It is insisted that, since the deed in express terms conforms to section 1969 of the Code of Georgia, that it passed the legal title, and was an absolute conveyance. The section last quoted is a statute, intended to give a prime and first right to the debt-paying value of the property so conveyed, to the grantee of the instrument executed under its provisions. Section 1969*a* provides:

"Whenever any person in this state conveys any real property by deed to secure any debt to any person loaning or advancing said vendor any money, or to secure any other debt, and shall take a bond for titles back to said vendor upon the payment of such debt or debts, or shall in like manner convey any personal property by bill of sale, and take an obligation binding the person to whom said property was conveyed to reconvey said property upon the payment of said debt or debts, such conveyance of real or personal property shall pass the title of said property to the vendee, and shall be held by the courts of this state to be an absolute conveyance, with the right reserved by the vendor to have said property reconveyed to him upon the payment of the debt or debts intended to be secured agreeable to the terms of the contract, and not a mortgage."

It is important, also, to consider another part of the same act—section 1971 of the Code. It is as follows:

"The vendor's right to a reconveyance of the property upon his complying with the contract shall not be affected by any liens, incumbrances, or rights which would otherwise attach to the property by virtue of the title being in the vendee, but the right of the vendor to a reconveyance shall be absolute and permanent upon his complying with his contract with the vendee, according to the terms."

It is urged for the defendant with great earnestness that the instrument is called a "deed;" that it "grants, bargains, aliens, conveys, and confirms;" that it gives an absolute right to sell; that it confers absolute seizin upon Nussbaum; and that the statute, and repeated decisions of the supreme appellate court of the state leave it no longer open to dispute that under such a conveyance the title absolutely passes. In support of this proposition, among many others, the following cases are cited: *Roland* v. *Coleman*, 76 Ga. 652; *Biggers* v. *Bird*, 55 Ga. 650; *Carswell* v. *Hartidge*, Id. 412; *Johnson* v. *Trust Co.*, Id. 691; *Behn* v. *Phillips*, 18 Ga. 466. In reply to the contention of the defendant's counsel the plaintiff's make the broad assertion that, if the deed, or other instrument to alienate or change the title is given to secure a debt, with the right existing either by operation of law, or by express reservation to redeem the property pledged, it is neither an alienation nor, in the absence of an express stipulation, identifying the conveyance and forbidding it, such a change of the title as will avoid the insurance. In the maintenance of this proposition great reliance is placed upon the decision of the supreme court of Georgia in *Insurance Co.* v. *Feagin*, 62 Ga. 515. In that case the policy made the insurance void in case of "any sale, transfer, or change of title in the property without the company's consent, indorsed on the policy." It was pleaded there that the insured had no title at the time of insurance. They had simply an interest under a bond for titles. The property had been previously transferred to one Ogden, as trustee, to secure a debt due to a trust association, and the trustee had in the same conveyance bound himself to reconvey to the assured on the payment of the debt. In that case, also, there was the same language of conveyance as in the deed before the court. There, as here, possession was left to the grantor, the assured. There, as here, the grantee had the power, upon default, to take possession of the property, to bargain and sell at public or private sale, to execute titles, and give possession to the purchaser, to apply the proceeds—*First*, to the payment of the note; and, *second*, to account for any balance to the parties insured. There is this difference: In that case there was an indorsement on the policy that the loss, if any, is made payable to the trust association, viz., the debtor intended to be secured; and this was done with the consent of the insurance company. The jury found for the plaintiff, and a motion for new trial was made upon the following ground, among others: Because the court charged that the deed to Ogden, trustee, was only a lien, and did not, without more, invalidate the policy; that it did not amount to a sale, there being no change of possession, or steps towards that end.

Upon these facts the appellate court held "that, while the legal title passed, it passed to a trustee, partly for the use of the assured, in fact to secure a debt of his, and with the express feature to account to him for the balance. While ejectment might have been maintained upon the deed, still the equitable title, the real title, and the possession with rents and profits remained in the assured, who still held an insurable interest. "The spirit and reason of the law in respect to insurance," said the court,

"is that the assured must not so alienate the property as to make the insurer·trust to·another to take charge of the property, instead of the man with·whom he bargained, and whom he was willing to trust." This would seem a practical and acceptable statement of the philosophy of this rule. How does the case at bar differ from the decision just quoted? In nothing, save that there the instrument of conveyance did not expressly refer to section 1969 of the Code. But that section was then of force, and in substance and in operative language the deed was as perfectly conformable to the 'statute as the deed' here. In truth, the language of the instruments is substantially identical; neither conveyed an indefeasible title. The law, as we have seen from section 1971, Code Ga., *supra*, then and now provided that "the right of the vendor to a reconveyance shall be absolute and permanent upon his complying with his contract with the vendee according to the terms."

Can it be doubted that Fried & Hecht had the right to redeem these goods by the payment of their debt to Nussbaums. The converse, indeed, in the absence of special stipulations as to what alienations or changes in the title shall invalidate the policy, so long as any interest remains in the assured; that is, so long as he retains an insurable interest therein the policy·is operative to protect that interest. 1 Wood, Ins. 701, and authorities cited. Again, it is evident that the destruction by fire of the property transferred to Nussbaum would in no sense release Fried & Hecht from the payment of the debt which it had been transferred to secure; and since, in that event, they would be deprived of the right to credit its value upon their debt, the measure of their loss would have been the value of the property itself; otherwise it would have gone to his credit. 1 Wood, Ins. 701. Certainly this was an insurable interest. Insurance being a contract of personal indemnity, no person can either enter or remain in a contract to insure property in which he personally has no interest; but as long as his interest, legal or equitable, is of a character that, in case of injury, he would sustain a pecuniary loss, the contract is valid. In the case of a pledge to a creditor the assured's rights are not lost until the full title vests in the purchaser, without any right of redemption on the part of the assured or his creditors. *Strong* v. *Insurance Co.*, 10 Pick. 40; *Bragg* v. *Insurance Co.*, 25 N. H. 289. Here the title passed, but the right of redemption is not only expressly reserved by the conveyance, but by operation of law. We hold, therefore, that there was no such alienation as avoided the insurance.

Now, does the stipulation·of the policy against any change in title or transfer have that effect? Many cases were cited by counsel for the defendant to show that it had. In *Iron Co.* v. *Assurance Co.*, 46 Wis. 23, 1 N. W. Rep. 9, it was held that a conveyance of the fee and taking back a mortgage for the purchase money is sufficient to put an end to the policy. In *Insurance Co.* v. *Allen*, 43 N. Y. 389, where the assured was simply a mortgagee, the transfer of the property mortgaged avoided the insurance. In *Savage* v. *Insurance Co.*, 52 N. Y. 502, the insured sold and took back a mortgage for the purchase money. In *Adams* v. *Insurance Co.*, 3 Benn. Fire Ins. Cas. 30, a case from Maine, it was held,

in 1849, that where the insured made an absolute deed, and took back an unsealed promise to reconvey, that it voided the insurance, but the unsealed promise to reconvey was of no effect as title, and so the conveyance was absolute. The court besides expressly held that the conveyance had none of the equitable incidents of a mortgage, and, besides, the agreement to reconvey had been canceled by the erasure of the name of its maker. The conveyance being absolute upon the face of the deed, "it cannot," says the court, "be assumed that the title was defeasible." *Edmunds* v. *Insurance Co.*, (Mass.) 4 Benn. Fire Ins. Cas. 540, where the voiding language was, "all alterations in the ownership, situation, or state of the property" in any material particular, is a strong case for the defendants. But the court says plainly that the provision in the pol-. icy was different from any that has been contained in any other policy that has come before the court for interpretation. In *Insurance Co.* v. *Ricker*, 10 Mich. 279, the conveyance was absolute on its face, with nothing whatever to show a reservation of any character to the insured, and it was attempted to show this reservation by parol. Here the reservation is in the face of the deed as well as in the statute. In *McIntire* v. *Insurance Co.*, 5 Benn. Fire Ins. Cas. 251, there was a special provision that the entry of a foreclosure of a mortgage would void the insurance. This was a special identification of a forbidden act, and the court say that the "defendants might well be unwilling to continue to insure property which is so situated that its destruction by fire might be the easiest or only way to make it beneficial to the assured." That is not true in this case. The court has with care compared and considered every case cited by the defendant's counsel in their able and exhaustive argument, and has been unable to find a case where, under the general terms, "any change or transfer of title," it has been held that a transfer to secure a debt with express reservation of interest in the property or its proceeds avoided the insurance. On the other hand, the decision in *Insurance Co.* v. *Feagin*, 62 Ga., *supra*, is a reliable precedent to the contrary; and while the court, in a general question of commercial jurisprudence like this, might not be bound to adopt the conclusions of the state courts implicitly, if it differs therewith, yet it is always happy to do so whenever possible. The reasoning of the court in that case is clear and strong, and its effect upon the judicial mind throughout the country will be largely enhanced when it is noted that the lamented Chief Justice JACKSON pronounced the decision, and that the austere, rigorous, and penetrating intelligence of WARNER assented to its conclusions.

It is the duty of the court, wherever proper, to assist and protect the great and beneficent mission of insurance. On the other hand, forfeitures are not favored by the law, and in the language of the supreme court of Georgia, in *Insurance Co.* v. *Coleman*, 58 Ga. 254, "insurance is business, and not elaborate and expensive trifling. Of course, what is in any degree material should be allowed its due effect, but the absolutely immaterial should count for nothing." In conclusion it would seem that if a debtor was debarred from making a lawful pledge of his assets to secure a creditor by a threatened avoidance of insurance, it might have a

most injurious effect upon commercial confidence; and if the companies desire to accomplish this result, they must make their provisions express, and leave nothing of ambiguity for construction and interpretation. The motion to strike the pleas is sustained.