REDMAN and others vs. THE HARTFORD FIRE INSURANCE COMPANY.

INSURANCE AGAINST FIRE. *(1–3) General rules of construction. (4, 5) Case stated: Application and policy construed: Warranties: Promissory undertakings.*

1. A stipulation in an application for fire insurance, construed, in a doubtful case, most strongly against the insurer, by whom it was framed.

2. In a doubtful case, that construction of a contract which will save it, is to be preferred to one which will destroy it.

3. The use of the word " warranty " in a contract will not always control its construction; as there may be a warranty without use of that word, and its use will not always create one.

4. An application for insurance against fire, on a printed form furnished by the company, contained over a hundred interrogatories, with answers thereto, and a statement that the applicant covenants and agrees with the company " that the foregoing is a just, full and true exposition of all the facts and circumstances in regard to the condition, situation, value and risk of the property to be insured, *so far as the same are known to the applicant and are material to the risk;* and the same is hereby made a condition of the insurance and a warranty on the part of the assured." The policy provides that the application " shall be considered a part of this policy, and a warranty by the assured." *Held,*

(1) That the stipulation in the policy that the application shall be considered a warranty by the assured, must be construed to mean *such* a warranty as is stipulated in the application itself.

(2) That the clause, " *so far as the same are known to the applicant,*" etc., is not an *additional* stipulation that the assured has stated all facts known to him material to the risk, though not called for in the interrogatories; but it *qualifies* the preceding clause, changing it from an absolute covenant that all the answers are true, to a covenant that they are true " so far as known," etc.

(3) That in an action upon the policy, therefore, it cannot be held void merely because the application contains some false statements of fact, but it must be shown that these were known by the assured to be false, and were material to the risk. And as to a promissory or continuing

undertaking, true when made but afterwards departed from, it must appear that the change increased the risk, and was thus material.

5. To the question, what material was used in lubricating the machinery, the assured answered, " Lard and sperm oil;" and to the questions, whether the machinery was regularly oiled, and, if so, by whom and how often, the answer was: " Yes, by engineer and miller, as often as necessary." The proof was, that, during the whole life of the policy, an oil known as " Fine Engine Oil " was constantly used in the mill for lubricating purposes, and that the machinery was not usually oiled by the engineer or miller, but by another person specially employed by plaintiffs for that purpose. *Held*, that the insurer could not escape liability on these facts, without proof that the use of said "Fine Engine Oil," instead of lard and sperm oil, was known to the assured, or that the risk was increased by the fact that some person other than the miller or engineer usually oiled the machinery.

APPEAL from the Circuit Court for *Monroe* County.

Action on a policy of insurance issued by the defendant on certain machinery of the plaintiffs in their flouring mill in the city of Prescott. A written and printed application for the insurance, signed by the plaintiffs, preceded the policy. This application is in the usual form, of questions by the insurer, relating to numerous matters supposed to affect the risk, and the answers of the plaintiffs thereto. It closes with the following stipulation: "And the said applicant hereby covenants and agrees to and with said company, that the foregoing is a just, full and true exposition of all the facts and circumstances in regard to the condition, situation, value and risk of the property to be insured, so far as the same are known to the applicant and are material to the risk, and the same is hereby made a condition of the insurance, and a warranty on the part of the assured." The policy provides that the application "shall be considered a part of this policy, and a warranty by the insured."

The case is more fully stated in the opinion.

The court below rendered a judgment of nonsuit against the plaintiffs; from which they appealed.

For the appellants, there was a brief by *J. S. White*, their

attorney, with *Vilas & Bryant*, of counsel, and oral argument by *Wm. F. Vilas*. They contended, among other things, that if there was a "promissory warranty" by the assured, a breach of which is relied upon to avoid the policy, the burden was upon the defendant to prove such breach (*Troy F. Ins. Co. v. Carpenter*, 4 Wis., 20; *Cassacia v. Phœnix Ins. Co.*, 28 Cal., 628; *Lounsbury v. Ins. Co.*, 8 Conn., 459; *Mut. Ben. L. Ins. Co. v. Cannon*, 48 Ind., 264; *Comm. Ins. Co. v. Moninger*, 18 id., 352; *Forbes v. Ins. Co.*, 15 Gray, 249; *Flynn v. Ins. Co.*, 17 La. Ann., 135); that the defense set up in the answer, in respect to the lubricator used, was, that plaintiffs had used "*an inferior and far less safe oil*," whose use may have caused the fire, and defendant should be confined to that defense (Wood on Ins., 830); that plaintiffs' evidence, giving it a favorable construction for them (*Imhoff v. Railway Co.*, 22 Wis., 683-4), tended to prove that the oil which they used was in fact composed of lard and sperm oil, and therefore the nonsuit was error; that at least plaintiffs' evidence showed that they had exercised ordinary care and diligence to obtain an article composed of lard and sperm oil, and had used the "Fine Engine Oil" in good faith, believing that it was so composed, and this was all that could be required of them. Wood on Ins., 144, 327, 848; *Bronson v. Wiman*, 10 Barb., 426; *Swinnerton v. Ins. Co.*, 37 N. Y., 189; *Marshall v. Am. Exp. Co.*, 7 Wis., 20. As to the construction of the contract, they argued that the understanding and intention of the insured are to be considered equally with those of the insurer; that the writing should in fact be construed unfavorably to the insurer, by whom it is prepared, rather than to the party who receives it (Wood on Fire Ins., § 171); that plaintiffs, as sensible men, can hardly be supposed, without clear evidence of the fact, to have agreed that, during the term of the policy, they would use nothing but lard and sperm oil, and that if they used anything else, though safer and better for their property and for the insurer's risk, they should forfeit all indemnity in case of

loss, although the loss was entirely disconnected with such use; that there was nothing in the contract to produce that effect, unless it were the declaration in the policy that the application should be considered as a warranty; that when the policy refers to the application, made several weeks before the policy was issued, and declares it to be a warranty, it must be understood as referring to the whole of it together, and requiring it to be considered no more a warranty, or limitation of the contract, than the application alone makes it to be *(Lindsey v. Ins. Co.,* 3 R. I., 157, 160; *Miller v. Life Ins. Co.,* 31 Iowa, 217); that there is not a word in the application which indicates an agreement on the part of the insured that they would continue during the term of the insurance the use of the oil which they were then using; that the form of the question as to lubricating oil, "What material is used," etc., indicates that no specific kind of oil was in the insurer's mind as necessary to the acceptance of the risk; that the form of the question would naturally have been, "Will lard and sperm oil be used?" if it had been intended to limit plaintiffs to the use of that specific article during the life of the policy; that insurers, who prepare their own contracts, should not be allowed to accomplish unjust and unreasonable forfeitures, unless they are provided for by the clear and definite language of the contract itself, so that the insured can appreciate the risk he incurs *(Ins. Co. v. Slaughter,* 12 Wall., 404; *Wilson v. Ins. Co.,* 4 R. I., 156; *Anderson v. Fitzgerald,* 24 Eng. L. & E., 13, per Lord St. Leonards); that the very language in the caption of the application, which declares that "the applicant will answer the following questions, and sign the same *as a description of the premises,* on which the insurance will be predicated," and the form of the questions themselves, all of which are in either the present or the past tense, as well as their number and minuteness, and the character of many of the inquiries, show that a representation of existing facts was intended; that the statement that " the foregoing is a just, full and true exposition

of all the facts and circumstances *so far as known to the applicant and material to the risk,*" also shows clearly that plaintiffs agreed only that the application was an exposition of certain facts and circumstances, and was a condition of insurance or a warranty only so far as those facts were known to them and material to the risk *(Aurora F. Ins. Co. v. Eddy,* 55 Ill., 213; *Schmidt v. Ins. Co.,* 41 id., 295; *U. S. F. & M. Ins. Co. v. Kimberly,* 34 Md., 224; *O'Niel v. Ins. Co.,* 3 N. Y., 122; *Smith v. M. & T. F. Ins. Co.,* 32 id., 399; *Sayles v. Ins. Co.,* 2 Curtiss C. C., 610); that there is certainly nothing in such an application which implies an agreement by the insured that the contract should be forfeited by the subsequent use of an oil not wholly of lard and sperm, but fully as safe *(Garcelon v. Ins. Co.,* 50 Me., 580; *Lindsey v. Ins. Co.* and *Miller v. Ins. Co., supra; Parker v. Ins. Co.,* 10 Gray, 302); that the doctrine of "promissory warranty" has not been settled in this state, and is in such a condition of confusion and uncertainty elsewhere as to leave this court free to adopt a just and honest rule; that, as parties have the right to make their own contracts, the insurer and the insured should be permitted to agree *in plain and distinct terms* that the latter shall perform, during the life of the policy or within some shorter period, certain covenants or agreements, and that unless he shall literally and strictly fulfill them, the insurance shall be forfeited; that such a consequence, however, should not be inflicted for breach of an agreement to perform certain acts or maintain certain conditions, except when it is plainly stipulated and bargained for; that, in the absence of such plain and distinct stipulation for a forfeiture, the consequences of a deviation from the agreement should be adjudged with justice according to the nature of the undertaking; that the doctrine, sometimes adopted in insurance cases, that there must be a strict and literal performance of every continuing agreement by one of the two contracting parties, at the peril of absolute loss of all

claim to performance by the other, thus adjudging for the most trivial and harmless deviation from the literal promise, the utmost forfeiture that could be adjudged for the grossest and most fraudulent violation of the contract, is in defiance of the principles which govern all other contracts; and that in all cases, unless the terms of the contract explicitly demand a literal performance, a *substantial performance* should be held sufficient. *Percival v. Ins. Co.*, 33 Me., 242; *Crocker v. Ins. Co.*, 8 Cush., 79; *Underhill v. Ins. Co.*, 6 id., 440; *Hovey v. Ins. Co.*, 2 Duer, 554; *N. Y. Belt. & Pack. Co. v. Ins. Co.*, 10 Bosw., 428; *Sayles v. Ins. Co.*, 2 Curt. C. C., 610; *Peoria M. & F. I. Co. v. Lewis*, 18 Ill., 553; *Ins. Co. of N. A. v. McDowell*, 50 id., 120; *Hide v. Bruce*, 3 Doug., 213; *Arcangelo v. Thompson*, 2 Campb., 620; *Garcelon v. Ins. Co.*, *Lindsey v. Ins. Co.* and *Parker v. Ins. Co.*, *supra*. See also *First Nat'l Bank v. Hartford Ins. Co.*, 6 Cent. L. J., 316; *Morse v. Ins. Co.*, 30 Wis., 540; *Hoffman v. Ins. Co.*, 32 N. Y., 414–15; Wood on Ins., 329.

*J. W. Lusk*, for the respondent:

1. The complaint charges, and the answer denies, that plaintiffs duly performed all the conditions of the policy on their part. This was sufficient to admit evidence of any breach whatever. Besides, the evidence as to breaches was admitted without objection; and it is too late now to object that there was a variance. *Bowman v. Van Kuren*, 29 Wis., 215; *Matthews v. Baraboo*, 39 id., 677. 2. Plaintiffs' evidence showed clearly that the oiling was not done by the miller or engineer. As to the lubricating material, while it is true that each proprietor, to the question put by his counsel, "What kind of oil did you use in your mill?" answered, "Lard and sperm oil," yet all their other answers and their own written admissions showed conclusively that this was not true. Taking their own evidence as a whole, therefore, and putting upon it the most favorable construction that could *legitimately* be given to it, it would not have sustained a ver-

dict in their favor. That was sufficient to justify the nonsuit. *Woodward v. McReynolds*, 2 Pin., 268; *Gardinier v. Otis*, 13 Wis., 461; *Dodge v. McDonnell*, 14 id., 553; *Blair v. Dockery*, 24 id., 502; *Greening v. Bishop*, 39 id., 553; *Steves v. Railroad Co.*, 18 N. Y., 425; *Silliman v. Lewis*, 49 id., 384. 3. The application and policy must be construed as if both were contained in one instrument. 2 Parsons on Con., 5th ed., 503, and cases there cited; May on Ins., 162; Wood on Ins., 271; *Burritt v. Ins. Co.*, 5 Hill, 191; *Battles v. Ins. Co.*, 41 Me., 208. 4. The statements of the application as to the persons by whom, and the material with which, the machinery was lubricated, were continuing warranties; and evidence that the material used was as safe as that named in the application, was properly excluded. *Blumer v. Ins. Co.*, 45 Wis., 622; *May v. Ins. Co.*, 25 id., 304; *Hinman v. Ins. Co.*, 36 id., 164; *Arthur v. Ins. Co.*, 30 Pa. St., 315; *First Nat. B'k v. Ins. Co.*, 50 N. Y., 45; 2 Parsons on Con., 5th ed., 499; Wood on Ins., 321.

*John C. Spooner*, of counsel, on the same side:

1. " Stipulations in the policy, or, what is the same thing, stipulations in some other writing which the parties expressly agree shall be a part of the policy, although not inserted in it, whether the same are statements of existing facts, or that certain acts shall thereafter be done, or a certain condition of things continue, are in general *part of the contract and express warranties*, unless it can fairly be gathered from the entire contract that the parties did not so intend." *Blumer v. Ins. Co.*, 45 Wis., 622. " As a rule, when the application is referred to as forming a part of the contract, the statements therein contained are held to have the force and effect of warranties." May on Ins., 164; Wood on Ins., 271–2, and authorities cited in note 1. " Any statement or description, or any undertaking on the part of the assured, on the face of the policy, which relates to the risk, is a warranty, an express warranty, *and a condition precedent.*" Wood on Ins., 341,

citing 13 Conn., 533.   2. In this case, the application is expressly made a part of the policy, and a warranty by the assured.   The words, "so far as the same are known to the applicant and are material to the risk," do not destroy the character of the agreement as a warranty.   Certain questions were put to the applicants, and answered by them.   Presumably, they answered only as to matters which were *known* to them.   The insurer made them material by the interrogatories concerning them.   After answering them, the applicants covenant that the known facts thus stated by them are a true exposition of all the facts and circumstances in regard to the condition, etc., of the property, "so far as the same are known to the applicant, and are material to the risk."   This does not qualify what is stated as known; it is an admission that what is stated is material, and a covenant against *concealment of other known and material facts*.   3. The statements as to the kind of lubricating oil used, and the persons who oiled the machinery, were continuing or promissory warranties. *Blumer v. Ins. Co., supra.*   4. Warranties are conditions precedent, and the burden of proof was upon the plaintiffs: May on Ins., p. 192, § 183; Wood on Ins., p. 867; *Wilson v. Ins. Co.,* 4 R. I., 169; *McLoon v. Ins. Co.,* 100 Mass., 472; *Cory v. Ins. Co.,* 107 id., 140; *Campbell v. Ins. Co.,* 98 id., 381; *Daniels v. Ins. Co.,* 12 Cush., 416; *Ripley v. Ins. Co.,* 30 N. Y., 136; *Bobbitt v. Ins. Co.,* 66 N. C., 70.   [Counsel criticised various cases, cited in opposition to this view, as not pertinent.]   5. Warranties must be strictly complied with, whether material to the risk or not.   Wood on Ins., 272; May on Ins., 161, 192; *Ripley v. Ins. Co., supra; Nicoll v. Ins. Co.,* 3 Woodb. & M., 529; *Wood v. Ins. Co.,* 13 Conn., 533; *Mut. B. L. I. Co. v. Miller,* 39 Ind., 475; *Parker v. Ins. Co.,* 10 Gray, 302; Wood on Ins., 317.   6. Evidence to show that plaintiff supposed that they were purchasing and using lard and sperm oil, and acted in good faith, was inadmissible. Wood on Ins., 305; *Smith v. Columbia Ins. Co.,* 17 Pa. St., 253; *Cooper v. Ins.*

*Co.*, 50 id., 299.    "The question whether a warranty has been broken, can never depend upon the knowledge, ignorance or intent of the party making it, touching the acts or the facts constituting the breach."    *Mead v. Ins. Co.*, 7 N. Y., 530.

LYON, J.    When the case of *Blumer v. The Phœnix Ins. Co.* (45 Wis., 622) was decided, a majority of the members of the court were of the opinion that positive and unqualified statements of the insured, contained in the application for the insurance, in respect to the precautions used against fire, although. in the present tense, are, in general, continuing or promissory undertakings, in the nature of express warranties, if made so by the contract; and that a failure by the insured to continue such precautions during the term of the policy is fatal to the contract.    A reärgument of that case has been ordered, and will probably be had at the next term.    We do not wish to decide the question there involved before the case is reärgued, and we do not find it necessary to do so on this appeal.    For the purposes of this case, it will be assumed that *Blumer v. The Ins. Co.* was correctly decided in the first instance, and the case will be considered from that standpoint.

The nonsuit was ordered on the ground that the uncontradicted evidence proved that the contract of insurance had been forfeited, and the insurer released therefrom, for the following reasons and those only.    Two of the interrogatories in the application for insurance, and the answers of the plaintiffs thereto, are as follows:    "What material is used for lubricating or oiling the bearings or machinery?"    Ans.    "Lard and sperm oil."    "Is the machinery regularly oiled? If so, by whom and how often."    Ans.    "Yes, by engineer and miller, as often as necessary."    The evidence seems to show conclusively that during the whole life of the policy an oil known as "Fine Engine Oil" was constantly used in the mill for lubricating purposes, and that the machinery was not usually oiled

by the engineer or miller, but by another person specially employed by the plaintiffs for that purpose.

The learned circuit judge held that the answers to the above questions were absolute and continuing undertakings in the nature of express warranties, and that the failure by the plaintiffs to use lard and sperm oil, and to have the machinery oiled by the engineer or miller, invalidated the contract of insurance and released the defendant from any and all obligations under it. Hence the nonsuit. This ruling ignored the questions whether the plaintiffs knew that there had been a departure from the requirements of the contract in respect to the oil used for lubricating purposes, or the person who used it, and whether the risk or hazard of fire was thereby increased.

By the terms of the policy the application is made a part of it. The two instruments are therefore parts of the same contract, and must be construed together, as though all of the statements and stipulations contained in each were written in one instrument. Hence the stipulation at the close of the application must be treated as if written in the policy.

It is manifest that such stipulation is not qualified or changed by anything in the policy. The condition therein that the application shall be considered a warranty by the assured, means just such a warranty as is stipulated in the application — no more and no less. Were this doubtful, the fact that the application came under the immediate scrutiny of the assured while negotiations for the insurance were pending, and the policy did not, would resolve the doubt by making the stipulation in the application controlling. Hence, the case turns entirely upon the construction of the stipulation in the application.

Counsel for defendant maintain that the first clause of the stipulation, to wit, that " the foregoing is a just, full and true exposition of all the facts and circumstances in regard to the condition, situation, value and risk of the property to be insured," is not qualified or affected by the next sentence — " so

far as the same are known to the applicant, and are material to the risk,"— but that such sentence is an additional stipulation that the insured have stated in the application all facts known to them which are material to the risk, although the information is not called for in the interrogatories. If this is the correct construction, the plaintiffs covenanted against both the *suggestio falsi* and the *suppressio veri*, and it would seem to follow that a breach of the covenant in either respect would be fatal to the contract under the last clause of the stipulation, which reads, " and the same is hereby made a condition of the insurance, and a warranty on the part of the assured." But the defense does not rest upon any alleged concealment of facts material to the risk and known to the plaintiffs, but upon their false affirmations, or their failure to comply with continuing or promissory undertakings, in respect to the precautions used, or to be used, against loss by fire of the insured property. Hence, the construction contended for would render the words "so far as the same are known to the applicant and are material to the risk" entirely immaterial and inapplicable in the present case.

Omitting these words from the stipulation, there remains a positive unqualified covenant that the statements contained in the application are true. This would make the case substantially like the *Blumer* case, and would sustain the nonsuit on the hypothesis assumed at the outset.

On the other hand, counsel for the plaintiffs maintain that the words " so far as the same are known to the applicant and are material to the risk," contained in the stipulation, qualify and limit the preceding clause, and restrict the condition and warranty thereinafter mentioned to such statements in the application as were material to the risk and known to the plaintiffs to have been false. Under this construction, the contract cannot be declared void unless it is made to appear, not only that the application contains some false statement of fact, but that the insured knew it to be false, and that the same was

material to the risk. And as to a promissory or continuing statement or undertaking, true when made, but afterwards departed from, it must appear that the change increased the risk or hazard of loss, or it is immaterial.

It seems obvious that one of the constructions contended for must be adopted; and the question is, Which of the two is the more reasonable and just? In determining this question, we shall enter into no minute analysis of the stipulation, nor indulge in any extended discussion. There are a few general considerations which control our judgment, and these will be very briefly noticed.

In the first place, we think there is no authorized rule of construction which will permit us to hold that the stipulation may be extended to facts and circumstances concerning which no interrogatory is propounded in the application. More than one hundred questions are propounded therein to the plaintiffs, calling for most minute information upon every matter which would seem to be of any interest to the insurer, and there is no general interrogatory calling for information in respect to matters not specially inquired after. Under these circumstances, the plaintiffs might well have believed that every fact which the insurer deemed material to the risk was specially called for, and that the stipulation was only intended to bind them to good faith in their answers to the interrogatories propounded to them. We think any intelligent and prudent business man would have so understood it. The stipulation was framed by the insurer, and had it been intended to require the insured to go beyond the interrogatories and disclose facts not called for therein (if any existed) material to the risk, a general interrogatory calling for such facts would have been inserted; or, at least, the stipulation would have been framed to express that intention more clearly. We cannot assume that the insurer would leave its intention in that behalf to rest in uncertain and doubtful inference, when it was so easy to express it clearly and unmistakably. If these views are correct,

they are fatal to the construction claimed on behalf of the defendant.

Moreover, that construction would work a forfeiture of the contract, and it is a maxim that, in a doubtful case, the construction should be preferred which will save the contract, rather than one which will destroy it.

The use of the word *warranty* in the stipulation is not very significant; certainly it does not control the construction. There may be a warranty without the use of the word, and its use may not in every case create one. The vendor of a horse who represents to the purchaser that the animal is sound, the purchaser relying upon such representation, warrants the soundness of the horse, although he does not use the word *warrant*. But, unless the representation is material, it is no warranty. On the other hand, if the vendor *warrants* the horse sound so far as he knows, that is no warranty in the legal sense of the term, and he can only be held liable for an unsoundness on proof that he knew the fact. That is, he is not liable as a warrantor, but only for his fraudulent and false representation. And here too the representation must be material, that is to say, it must have been an inducement to the contract, or there is no liability. So the stipulation under consideration, notwithstanding the use of the word *warranty*, may, without doing violence to the language employed, be construed as merely an agreement against false and fraudulent material statements in the application. Regarding the statements upon which this case turns as continuing or promissory representations, the same elements of knowledge by the plaintiffs that they were false or have been departed from, and of materiality, must be proved to exist, or the contract cannot be held void.

For the reasons above suggested, and because we believe that to be the more natural and reasonable construction of the language employed in the stipulation, we adopt the construction claimed on behalf of the plaintiffs. This is substantially

the construction given to a similar clause in a policy in *Hough-ton v. Ins. Co.*, 8 Met., 114.

We hold, therefore, that, to escape liability on the policy, the defendant must show that the use of "Fine Engine Oil," instead of lard and sperm oil, was known to the plaintiffs, and increased the risk; or that the risk was increased by the fact that some person other than the engineer and miller usually oiled the machinery.

The judgment of nonsuit cannot be sustained unless such conditions of knowledge and materiality were conclusively proved. That they were not, will scarcely be denied. Besides, testimony offered by the plaintiffs to negative the existence of one of these conditions, was rejected. The judgment must be reversed for the following reasons:

I. The testimony tended to prove that the plaintiffs believed that the oil used in their mill for lubricating purposes, although denominated "Fine Engine Oil," was a compound composed mainly of lard and sperm oil. We think the testimony was sufficient to send that question of knowledge to the jury.

II. The court rejected testimony which, had it been received, might have tended to show that the oil used in the mill during the life of the policy was as good and safe as lard and sperm oil. The evidence should have been received on the question of the materiality of the statement on that subject in the application.

III. There does not appear to be any evidence that the machinery was not properly oiled by the person employed for that purpose. If it was properly oiled, the representation in that behalf, although false, is immaterial. The burden was upon the defendant to show the materiality of the statement, and it failed to do so.

*By the Court.* — Judgment reversed, and cause remanded for a new trial.