DUNBAR and another, Respondents, vs. THE PHENIX INSUR-
ANCE COMPANY OF BROOKLYN, N. Y., Appellant.

*October 10 — November 8, 1888.*

INSURANCE AGAINST FIRE. *(1, 2) Failure to attach copy of application
to policy: Signature of insured: Presumption as to truth of state-
ments. (3) Application filled out by agent: Untrue statements:
Incumbrances. (4) Failure to disclose material facts: Waiver.*

1. A copy of an application for insurance without a copy of the appli-
cant's signature thereto, is not a true copy of such application
within the meaning of sec. 1945a, R. S.

2. Under sec. 1945a, R. S., if an insurance corporation fails to attach to
a policy a true copy of an application which is made a part thereof
or referred to therein, the statements made in such application
will, as against such corporation, be conclusively presumed to be
true.

3. The agent of an insurance company filled out an application and,
without inquiry of or authority from the insured, inserted therein
an answer stating that the property was unincumbered. He pre-
sented the application to the insured for his signature, without ac-
quainting him with its contents, and the latter signed it, not know-
ing that it contained such statement. *Held,* that the insured is not
bound by such statement, and the company cannot, on the ground
of its falsity, avoid the policy.

4. If an insurance company receives an application for insurance with
a material question therein unanswered or not fully answered, and
issues its policy thereon, it thereby waives a provision in the policy
avoiding it in case the facts called for by such question are not fully
disclosed.

APPEAL from the Circuit Court for *Marathon* County.
Action upon a policy of insurance against fire. The facts
will sufficiently appear from the opinion. At the close of
the testimony the court directed a verdict for the plaintiffs,
and from the judgment thereon the defendant appeals.

For the appellant there was a brief by *Bardeen, Mylrea
& Marchetti,* and oral argument by *C. V. Bardeen.* They
contended, *inter alia,* that the copy of the application at-

tached to the policy put the insured in possession of all the facts, statements, and representations made by him to the company in writing as the basis of the contract; and there was, therefore, a substantial compliance with the statute. *Miller v. Hartford Ins. Co.* 70 Iowa, 704. The court having excluded the application, this litigation must be considered as though no application had been made. It must stand or fall upon the contract of the parties, regardless of any representations made by the plaintiffs as an inducement for the contract. One of the conditions on which the defendant assumed the risk was, that if there be a mortgage or other incumbrance on the property it must be so represented to the company and so expressed in the written part of the contract, otherwise the contract or policy would be void. If this provision in the policy is a reasonable and proper one, then the court below should have directed a verdict for the defendant instead of for the plaintiffs. See Wood on Ins. (2d ed.), sec. 120; *Beck v. Hibernia Ins. Co.* 44 Md. 95; *Waller v. Northern Ass. Co.* 10 Fed. Rep. 232; *Penn. Ins. Co. v. Gottman's Adm'rs*, 48 Pa. St. 151; *Bowman v. Franklin F. Ins. Co.* 3 Ins. L. J. 935; *Gottman's Adm'r v. Penn. Ins. Co.* 56 Pa. St. 210; *Hinman v. Hartford F. Ins. Co.* 36 Wis. 165; *Alkan v. New Hampshire Ins. Co.* 53 id. 136; *Columbian Ins. Co. v. Lawrence*, 2 Pet. 25; *Rohrback v. Germania F. Ins. Co.* 62 N. Y. 47; *Mers v. Franklin Ins. Co.* 8 Ins. L. J. 505; *Richardson v. Maine Ins. Co.* 46 Me. 394; *Reaper City Ins. Co. v. Brennan*, 58 Ill. 158; *Smith v. Bowditch Mut. F. Ins. Co.* 6 Cush. 448; *Kibbe v. Hamilton Mut. Ins. Co.* 11 Gray, 163; *Bowditch Mut. F. Ins. Co. v. Winslow*, 3 id. 415; *Penn. Mut. F. Ins. Co. v. Schmidt*, 119 Pa. St. 449.

*Gabe Bouck*, for the respondents.

TAYLOR, J. The respondents brought an action to recover for a loss sustained under a fire insurance policy issued to

them by the appellant company.    There is no question made as to the issuance of the policy, or as to the fact of a loss by fire having occurred during the life of the policy, or as to the amount the respondents are entitled to recover in the action, if entitled to recover at all.

The defenses set up in the answer are:    (1) That a written application for the policy was made by the insured, and that in such written application the respondents stated that the insured premises were not incumbered by mortgage or otherwise; that by the terms of the policy the statements made in such written application are warranties, and if false avoid the policy.    The answer then alleges that at the time the policy was issued, and at the time such written application was made and signed by the respondents, the insured premises were incumbered by a mortgage for $5,000, which was a valid and subsisting mortgage upon the insured property at the time the policy was issued, and so continued to be until after the loss occurred, and that the insurance company had no knowledge of such incumbrance until after the loss. (2) That the policy contained the following provision:    "If the interest of the assured in the property be any other than an  absolute fee-simple title, or  if any other person or  persons have any interest whatever in the property described, whether it be real estate or personal property, or if the building insured, or containing the property insured, by this policy, stands on leased ground, or if there be a mortgage or other incumbrance thereon, it must be so represented to the company and so expressed in the written part of the policy; otherwise the policy shall be void."    And the answer then alleges "that on the 24th day of February, 1885, the plaintiff *Charles F. Dunbar*, with his wife, made, executed, and delivered to the First National Bank of Wausau, Wisconsin, a mortgage upon an undivided one-half interest of the property described in said policy or contract of insurance, to secure the payment to said bank by said *Charles F.*

*Dunbar*, of the sum of five thousand dollars, which said mortgage was a valid, existing, and outstanding lien and incumbrance upon said insured property at the time of the renewal of the contract of insurance aforesaid, and at the time said *Charles F. Dunbar* signed the application aforesaid; and that the same was not paid or satisfied until on or about September 1, 1885, and long after the loss by fire sustained by the plaintiffs as alleged in the complaint. Further, upon information and belief, this defendant alleges that the plaintiffs fraudulently and knowingly withheld from the defendant's agents and from defendant all knowledge of the existence of said mortgage; and did falsely, fraudulently, and knowingly represent to this defendant, and to its agents, that said property was not incumbered, well knowing that it was material to the risk and of great importance to this defendant."

The following facts were established on the trial: (1) That the policy in question and several others issued by the same agent were issued to the respondents as renewals of previous policies which had been issued upon the same property to *C. F. Dunbar* individually. (2) That, previous to the issuing of the policy in question, *Dunbar* had sold one half of the insured property to the respondent *Stubbings*, a resident of Chicago; that after such sale, and before the policy in question was issued to the respondents, *Dunbar* and his wife placed a mortgage for $5,000 upon the undivided half of the property still owned by *Dunbar;* that this mortgage was a valid mortgage, and remained on the property unpaid until after the loss occurred; and that the undivided half of the property insured, which was owned by *Stubbings*, was free from all incumbrances. (3) That the agent of the defendant company, previous to the issuing of the policy in question, spoke to *Dunbar* about continuing the insurance of the property, and he replied that he did not know that *Stubbings* desired to have his interest

insured, and declined to insure until he had further informa-
tion from *Stubbings;* that shortly afterwards the agent told
*Dunbar* that he had word from *Stubbings* to keep his interest
insured, and thereupon the respondent *Dunbar* requested
the policy to be made out. (4) That the agent of the de-
fendant and of the other companies in which policies were
taken by the respondents, without any instructions from
the respondents or either of them, made out written appli-
cations for insurance in the several companies, containing
questions and answers such as the agent supposed corre-
sponded with the facts,— his information being derived
mainly from the former applications made by the respond-
ent *Dunbar;* and that in such written application, to the ques-
tion " Incumbrances?" the said agent inserted the following
answer: " None." (5) That these written applications (there
being quite a large number of them) were presented to *Dun-
bar* by the agent in a hurried manner, and he was requested to
sign them, and did sign them, and they were immediately
taken away by the agent; but it clearly appears that they
were not read to *Dunbar*, and that *Dunbar* did not read them,
nor did the agent in any way communicate to *Dunbar* the
fact that it was stated in such application that the premises
were not incumbered by mortgage or otherwise, nor did he,
at any time before the application was signed by *Dunbar*,
make any inquiry of him on that subject, but copied the
answers from the former applications, the agent assuming
without inquiry that the property was unincumbered. The
evidence further shows that neither *Dunbar* nor *Stubbings*
knew that the written application contained any such state-
ment as to incumbrance until after the loss occurred. It also
appears that the mortgage was paid in September next after
the loss.

Upon the trial in the circuit court, upon the motion of
the counsel for the respondents, the court held that the
company could not avail itself of any statements made in

the written applications as a foundation for a defense to the action. This motion was based upon sec. 1945a, R. S. The ground of the motion was that what purported to be a copy of such application, attached to the policy when delivered to the respondent *Dunbar*, did not have a copy of his signature appended to the same. The following is a copy of said sec. 1945a: "All fire insurance corporations, except town insurance corporations, shall, upon the issue or renewal of any policy, attach to such policy, or indorse thereon, a true copy of any application or representations of the assured, which, by the terms of such policy, are made a part thereof, or of the contract of insurance, or referred to therein, or which may in any manner affect the validity of such policy. The omission so to do shall not render the policy invalid; but if any corporation neglects to comply with the requirements of this section it shall forever be precluded from pleading, alleging, or proving such application or representations or any part thereof, or the falsity thereof or any part thereof, in any action upon such policy; and the plaintiff in any such action shall not be required, in order to recover against such corporation, either to plead or prove such application or representations, but may do so at his option."

We are of the opinion that the copy of the application attached to the policy, not having the copy of the name of the applicant appended thereto, cannot be said to be a copy of such application, within the meaning of the statute. Certainly the signature of the applicant is a very material part of the instrument. The signature is the thing which gives force to the application, and, when signed with knowledge of its contents, is conclusive upon the insured. I suppose that no one would contend that under our statute (sec. 2675, R. S.) which provides that, "in an action . . . founded upon an instrument for the payment of money only, it shall be sufficient for the party to give a copy of the

instrument, and to state that there is due to him thereon, from the adverse party, a specified sum, which he claims," a complaint which set out the copy of the instrument, without a copy of the signature of the defendant thereto, would comply with such statute. The following cases show the strictness of courts in construing statutes which require copies of writs or other instruments to be served or filed: *U. S. v. Insurgents*, 2 Dall. 342; *Cooke v. Vaughan*, 4 Mees. & W. 69; *Smith v. Pennell*, 2 Dowl. 654; *West Winsted S. B. & B. Ass'n v. Ford*, 27 Conn. 282; 4 Am. & Eng. Ency. Law, 146. Without intimating that we are inclined to hold to the strictness of the English cases above cited, we think that the signature of the party to an instrument which receives its vitality solely from such signature, is such a substantial part of it that a copy of it must contain such signature.

The fact that a copy of the application was not attached to the policy when delivered to the plaintiff does not necessarily exclude the application from the case, if such application be necessary to the case of the insured. The only effect of not attaching a copy is that the insurance company is deprived of all right to introduce the same as evidence to make out its defense, or to disprove the statements made in such application if introduced by the plaintiff to sustain his action. If said sec. 1945a be applied to this case, it seems to us that the application must be excluded as evidence for any purpose for the defendant, but that the plaintiff may use it to show that an application was made by the insured, and that in such application there is a statement as to the title of the insured property and as to the incumbrances thereon, and the answers, if any, made to such inquiry; and under the statute the insurance company is estopped from showing that such answers are false. In this view of the case, the defendant can make no defense on the ground that the plaintiffs did not disclose the alleged

fact that the property was incumbered. The application says it was not, and, the defendant having failed to attach a copy of it to the policy when it was delivered to the plaintiff, it cannot deny such statement made in the application.

The object of the statute was to avoid the difficulties which frequently surrounded the insured in making out a case against the insurance company, when written applications were made for the policy and the statements made in such applications were made warranties by the terms of the policy. These written applications were usually gotten up in the manner that this one was. The agent of the company fills it up, presents it to the applicant, he signs it, and generally without any definite knowledge of what it contains, and the company retains it in its possession until a loss occurs, and then produces it to prove that some false statement was made in it which avoids the policy. This statute says to the company: You must attach a copy of such application to the policy, and deliver it to the assured with the policy, or you shall be estopped from alleging that anything stated therein by the applicant is false. No copy having been delivered in this case, the statement in the application that there were no incumbrances on the property at the time of the insurance is, for the purposes of this case, conclusively presumed to be true.

It is further urged by the learned counsel for the company that, treating the case as though no application in writing had been made for the insurance and no questions asked as to the incumbrance, still the policy is void under the condition in the policy itself which is quoted above. We do not determine the question whether this policy would be void, if no written application for the insurance had been made and no inquiries in regard to incumbrance had been made by the company before or at the time the policy was issued, because the insured did not of his own motion in-

form the company of the existence of the incumbrance on the same. We think this case cannot be determined upon any such basis. The evidence and the record returned to this court show that an application was made, and that the matter of incumbrances was inquired about and answered by the agent of the company, either with or without the authority of the assured, and under the statute such answer is conclusive against the company.

We think the verdict in this case should be sustained upon another ground. Treating the application as in the case for all purposes of the defense, in such case it clearly appears that the answer to the question as to incumbrances was inserted in such application by the agent of the company upon his own motion and without inquiry of or authority from the insured. In such case this court has held, and we think correctly, that the insured is not concluded by such answer; and, if it be false, its falsity must be treated as the mistake of the company, and the company cannot avoid the policy by reason of such mistaken statement of its own agent. In such case the answer must be considered as either stricken from the application, and the question treated as not answered, or the answer be treated as true for the purpose of determining the rights of the parties to the action; and, in either case, it is very clear that the plaintiff should recover. The following cases in this court hold that the mistake made in the answer to the interrogatory cannot be charged as the fault of the insured, and he is not bound by it: *Parker v. Amazon Ins. Co.* 34 Wis. 363, 370; *Mechler v. Phœnix Ins. Co.* 38 Wis. 667; *Redman v. Hartford F. Ins. Co.* 47 Wis. 100.

Treating the case most favorably to the company, and the case must stand as though the question as to incumbrances remained unanswered. In that state of the case we have the fact that an application in writing was made for this insurance; that various inquiries were made in such

application as to the location, situation, value, and kind of title by which the insured held the insured property; and the question as to whether or not there were incumbrances on the property was not inquired about, or, if inquired about, was not answered by the insured. In such case it has been frequently held that the policy is not avoided because the insured did not voluntarily disclose that there were incumbrances on the property. The authorities, are uniform that when an application for an insurance has been made in writing, and the company receives such application with a material question therein unanswered or not fully answered, the company waives all right to a more complete answer or disclosure upon the subject of the question; and, if a policy be issued upon such application, it cannot be avoided under the condition in the policy above quoted. It seems to us this is not only sound but wholesome law. The insurance company presents to the applicant for insurance a paper requiring him to answer a long list of interrogations. Among them is an interrogatory concerning incumbrances. The other interrogations are answered. The insured neglects to answer it. Still the company issues the policy; and it contains a provision that if there be any incumbrance upon the insured property and the fact of such incumbrance is not disclosed, the policy shall be void. The courts justly say that having made inquiries about the matters which are material in regard to the risk, and having failed to require a disclosure as to incumbrances, you waive that provision in the policy, and cannot afterwards set it up to avoid a recovery on it after a loss occurs, unless it be shown that the suppression of the fact that there were incumbrances on the property was fraudulent.

In this case there is no pretense that there was any fraudulent suppression of the fact that there was a mortgage upon the property. Had the attention of the plaintiff *Dunbar* been called to the matter, it is evident that he would have

disclosed the fact, and to my mind it is equally evident that the policies would have been issued had such disclosure been made. The following are some of the great number of cases holding the rule as above stated: *Lorillard F. Ins. Co. v. McCulloch*, 21 Ohio St. 176, 179; *Hall v. People's Mut. F. Ins. Co.* 6 Gray, 185, 191; *Liberty Hall Ass'n v. Housatonic Mut. F. Ins. Co.* 7 Gray, 261; *Dayton Ins. Co. v. Kelly*, 24 Ohio St. 345, 367; *Gates v. Madison Co. Mut. Ins. Co.* 5 N. Y. 469, 475; *Browning v. Home Ins. Co.* 71 N. Y. 509, 512; *Washington Mills Emery Mfg. Co. v. Weymouth & B. Mut. F. Ins. Co.* 135 Mass. 503; *Comm. v. Hide & Leather Ins. Co.* 112 Mass. 136; *Carson v. Jersey City Ins. Co.* 43 N. J. Law, 300; *Phœnix L. Ins. Co. v. Raddin*, 120 U. S. 183, 191; *Hosford v. Germania F. Ins. Co.* 127 U. S. 399, 403; *Bersche v. St. Louis Mut. F. & M. Ins. Co.* 31 Mo. 555; *Dohn v. Farmers' J. S. Ins. Co.* 5 Lans. 275; 1 Wood on Ins. §§ 175, 176, and notes.

Upon the facts in this case, we think the circuit court properly directed a verdict for the plaintiff.

*By the Court.*— The judgment of the circuit court is affirmed.

See note to this case in 40 N. W. Rep. 386.— REP.