CASE 54.— ACTION BY THE CONTINENTAL INSURANCE CO.
AGAINST J. D. GARDNER AND OTHERS TO
ENFORCE AN ALLEGED MORTGAGE LIEN ON
LAND.—April 25.

# Gardner v. Continental Ins. Co.

Appeal from Mason Circuit Court.

James P. Harbeson, Circuit Judge.

Judgment for plaintiffs. Defendants. appeal.
Reversed.

1. Reformation of Instruments—Mistake—Evidence—Sufficiency
—Insurance—Contract—Modification—In an action by an
insurance company to enforce a mortgage lien on the theory
that it had been subrogated to the rights of the mortgagee,
evidence examined, and held to show that the mortgage
clause attached to the policy was not of the character asked
or desired by the insured, but was affixed by mistake, war-
ranting a reformation of the instrument in that regard.

2. Insurance—Avoidance of Policy for Misrepresentation—Title
of Insured—In an action by an insurance company to enforce
a mortgage lien on the theory that it had been subrogated
to the rights of the mortgagee, evidence examined, and held
to show that the insured did not make certain alleged false
or fraudulent representations with respect to his title in
his application.

3. Same—Estoppel to Avoid Policy—Insertion by Agent of False
Answers in Application—Where an application for insurance
is made out by the company's agent, who writes in answers
which are untrue and made from his own knowledge, or that
are not made by the insured, and the latter signs the appli-
cation without knowing that the answers contained therein
are untrue, the insurer will be estopped to claim that such
answers constitute misrepresentations which invalidate the
contract.

4. Same—Waiver—Payment of Loss—Where an insurance company paid a loss with knowledge of alleged fraud and misrepresentations contained in the application as to the interest owned by the insured in the premises, it waived such alleged fraud and misrepresentations, and ratified the contract made by its agent.

5. Same—Where insured requested and believed he was procuring an addition to his policy which would have made the mortgagee of his property merely his agent to receive payment of the insurance to the extent that the father was interested therein, the doctrine of waiver of defenses that might have been known to the company at the time of payment will apply, although through the mistake of the insurer's agent a different provision was attached to the policy, since the law will treat as consummated that which the parties intended and contracted to do.

GREENE & VAN WINKLE, A. B. and A. D. COLE for appellants.

THOS. R. PHISTER and E. L. WORTHINGTON for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

This case comes to us for review the second time. The opinion in the former appeal (Gardner v. Continental Insurance Company, 75 S. W. 283, 25 Ky. Law Rep. 426), defined the issues made by the petition and answer of the appellant Gardner, held the answer good on demurrer, reversed the judgment appealed from, and remanded the case for further proceedings consistent with the opinion.

The action was brought by appellee, Continental Insurance Company, against appellant to enforce an alleged mortgage lien for $1,612.50 on a tract of land in Mason county containing 100 acres. The cause of action set forth in the petition is bottomed on the following state of facts: The mortgage was executed to J. D. Mayhew by S. D. Gardner, then owner of the

land, to secure the payment of a loan of $1,800, for which the former held Gardner's note. After the execution of the mortgage, S. D. Gardner conveyed the land to his son, the appellant J. D. Gardner, in consideration of the assumption by the latter of the mortgage debt to Mayhew. The deed, however, expressly reserved to the grantor a homestead in the land. After the conveyance from S. D. Gardner to J. D. Gardner, the latter obtained of appellee a policy of insurance for $1,000 on the dwelling house situated on the land in question, $500 on a barn near the house, and a further sum on certain personal property belonging to J. D. Gardner stored in the barn. After the issual of the policy appellant requested appellee's agent, Walsh, to insert in or add to the policy the usual clause providing that the loss, if any, on the house or barn, should be paid to Mayhew, the holder of the mortgage lien, as his interest might appear. The agent attempted to comply with his request, but added to the policy what is called a "standard mortgage clause," making the loss under the policy "payable, for assured's account, unto J. D. Mayhew, trustee, or mortgagee, as his interest may appear," and further providing "that whenever said company should pay any sum for loss under said policy No. 24, and should claim that, as to the grantors in the mortgage or trust deed, or the owners of the property so insured, no liability therefor existed, then said company should at once be subrogated to all the rights of the said trustee or mortgagee under all the securities held for the debt by him or them." Several months after the issual of the policy the dwelling house and barn were destroyed by fire. On July 15, 1899, the amount of loss due on the building, $1,629.50, was paid Mayhew by appellee, but was not credited

on the mortgage debt owing by appellant. Appellee
then took of Mayhew an assignment of that much of
the mortgage debt and lien. Appellee's alleged right
to the relief sought in the case at bar is based on that
assignment; it being its contention that by reason
thereof it was subrogated to all the rights under the
mortgage of Mayhew, the original mortgagee, which
entitles it to the enforcement of the mortgage lien by
a sale of the land on which, it was given, subject to
the payment of so much of the mortgage debt as is
yet held by Mayhew and remains unpaid. Mayhew
was made a party to the action and required to assert
his lien, which he did by filing answer setting forth
the lien, and the balance due him. Appellant's
answer to the petition traversed, its material aver-
ments, specifically controverted the right of appellee
to be subrogated to the lien rights of Mayhew by vir-
tue of the assignment to the latter or otherwise, and
alleged a mistake on the part of appellee's agent in
adding to the policy the provision contained in the
clause relied on by appellee as entitling it to the right
of subrogation claimed; the averment of the answer
as to this matter being, in substance, that appellant,
in requesting the addition to the policy of the clause
for the benefit of Mayhew, merely asked the agent of
appellee to add or attach thereto the "open mortgage
clause," simply providing, "Loss, if any, payable to
J. D. Mayhew, as his interest may appear;" that
neither he nor appellee's agent intended or agreed
to the addition to the policy of the form of mortgage
clause known as the "standard mortgage clause"
that was used by the latter, and that its adoption was
a mistake, which appellant did not discover, and the
legal effect of which he did not understand, until after
the payment of loss under the policy to Mayhew, and

the attempted assignment by the latter to appellee
of the mortgage debt and lien. The prayer of the
answer asked the reformation of the policy to con-
form to the contract. After the return of the case to
the lower court appellee filed a reply which contro-
verted the affirmative matter of the answer, and, in
addition, alleged that appellee procured the policy
by fraud and misrepresentation—that is, in the writ-
ten application for same he falsely represented him-
self to be the sole and absolute owner of the land upon
which the insured buildings stood, whereas his father,
S. D. Gardner, owned a homestead therein of the value
of $1,000—that by the terms of the policy such repre-
sentation of sole ownership was as to a fact material
to the risk, and its alleged falsity released appellee
from all liability to appellant for loss sustained in the
destruction by fire of the insured buildings, although
such liability still existed as to the mortgagee, May-
hew; and that the payment to him by appellee of the
loss entitled it to the assignment of the mortgage
debt and lien from Mayhew and consequent right of
subrogation thereby conferred. The statements of the
reply as to the alleged fraud in obtaining the policy
of insurance were specifically denied by appellant's
rejoinder. In addition, the rejoinder made the aver-
ment that the representations, if any, constituting the
alleged fraud were known to appellee when it paid
the loss under the policy to Mayhew, and such pay-
ment with that knowledge operated as a waiver of
its right to thereafter rely upon the alleged fraud;
furthermore, that appellee waived the alleged fraud
by retaining the premium of $23, paid it by appellant
upon the policy after it received information thereof.
The averments of the rejoinder were controverted
by surrejoinder. The completion of the issues was

followed by the taking of proof, and on submission the lower court rendered judgment in appellee's behalf and against appellant for the amount claimed in the petition, adjudged the amount recovered a lien on the land and directed its sale, to pay, first, so much of the Mayhew mortgage debt as remains unpaid; second, that claimed by appellee.

A proper determination of the issues of fact presented by the pleadings will lead to a correct understanding of the propositions of law urged by counsel. The weight of the evidence is to the effect that the addition to the policy, for the benefit of Mayhew, of the "standard mortgage clause," with right of subrogation, instead of an "open mortgage clause," was a mistake committed by appellee's agent, Walsh. Only three witnesses testified as to this transaction. Two of them, J. D. Gardner and Warren Gardner, said J. D. Gardner told Walsh he wanted the policy changed in favor of Mayhew "as his interest may appear;" that Walsh said he would make the change, went to his desk, filled up a blank form, attached it to the policy, folded the policy, and handed it to J. D. Gardner, telling him at the time it was fixed all right. Both witnesses also testified that neither of them looked at the mortgage clause or thereafter read it, and that they did not then know or thereafter learn, until after the payment of the loss to Mayhew, that Walsh had attached a "standard" clause to the policy. Walsh, appellee's agent, testified that he attached the mortgage clause in question to the policy; that he thought the form used complied with the request of appellant; that he was simply asked to make the policy "payable to Mr. Mayhew;" that he probably did not read the mortgage clause attached by him, and did not read it to appellant, nor did the

latter ask for a standard clause in the nature of a separate contract with Mayhew, and that he (Walsh) did not then know any difference between the "ordinary" mortgage clause asked for by appellant, and the "standard" clause affixed by him to the policy. The foregoing testimony seems to leave no doubt of the fact that the mortgage clause attached to the policy was not of the character asked or desired by appellant, but was, doubtless, such as is used by the company when insurance is procured by the mortgagee alone and the premium paid by him. In the case at bar the change in the policy, though for the benefit of the mortgagee, was made at the instance of the mortgagor, who had paid the premium. Under such circumstances he had the right to adopt the "ordinary" mortgage clause in making the change in the policy; that being the only one with which he seemed familiar. Certainly it was not right that appellee's agent should have used the form selected without consulting appellant and explaining to him its legal meaning and effect.

It appears equally certain that appellant did not make the alleged false or fraudulent representations with respect to his title to the land, attributed to him by the reply. As to that matter, appellant, Warren Gardner and Walsh were again the only witnesses. The application for the policy, to which appellant placed his signature, makes it appear that he was the sole owner of the land, and contains no mention of the homestead reserved by his father, but according to appellant's testimony and that of Warren Gardner the application was filled out by Walsh after some general conversation about the property, descriptive of the buildings and as to the amount of the insurance desired, but that no questions were asked by Walsh

as to the kind or extent of appellant's title, and that the only specific inquiry made by Walsh was as to the amount of the mortgage debt on the property. The Gardners further testified that appellant signed the application at Walsh's request, without reading it, or hearing it read, and that neither of them knew it contained a statement to the effect that appellant was the sole owner of the land, or that it omitted to state that his father owned a homestead therein. The testimony of Walsh offers no real contradiction of that of the Gardners. He goes no further than to say it was his recollection that the answers written by him in the application were based on information given him by appellant, but that they might have been written from impressions received by him in previous conversations.

The burden was upon appellee to prove the fraud and misrepresentation charged. The weight of the evidence is that neither was shown. The rule seems to be that where an application for insurance is made out by the agent of the insurer, and the agent writes in the application answers which are untrue and that are made from his own knowledge, or that are not made by the insured, and the insured signs the application without in fact knowing that the answers contained therein are untrue, the insurer will be estopped to claim that such answers constitute misrepresentations which invalidate the contract of insurance. In such state of case it will be held by the courts either that the questions were not asked, or answered, or that the failure to answer them was waived, or that the answers so made by the agent are to be taken as true. Phoenix Ins. Co. v. Coomes, 13 Ky. Law Rep. 238; White v. Ins. Co., 12 Ky. Law Rep. 191; Hosford v. Fire Ins. Co., 127 U. S. 399, 8 Sup. Ct. 1199, 32

L. Ed. 196; Hartford Fire Ins. Co. v. Gray, 80 Ill.
28; Dunbar v. Phenix Ins. Co., 40 N. W. 386, 72 Wis.
492. In view of the testimony furnished by the rec-
ord as to the manner in which the application was
prepared, it is sufficient to say that appellee's claim
of fraud and misrepresentation on appellant's part in
procuring the insurance is not sustained. But, if such
fraud and misrepresentation were proved, it is clear
that it must have been known to appellee when and
before it paid the loss. Bently, appellee's adjuster,
proves that he knew of it two years before the loss
was paid. Therefore, by the payment of the loss with
such knowledge on its part, appellee waived the
alleged misrepresentation and fraud claimed to have
been made and practiced by appellant, and ratified
the contract of insurance made by its agent, which
estops it to now complain of the alleged deceit in-
ducing the issual of the policy, or to recover of appel-
lant the money it paid Mayhew. N. Y. Life Ins.
Co. v. Hord (Ky.) 25 Ky. Law Rep. 1931, 77 S. W.
380; Silloway v. Neptune Ins. Co., 78 Mass. 73.

It is, however, insisted for appellee that as the loss
in this case was paid to Mayhew, and not to appellant,
the doctrine of waiver or ratification does not apply.
If such a provision for the benefit of the mortgagee
had been attached to the policy as the proof shows
appellant directed, and as he supposed had been
added—that is, "loss, if any, payable to J. D. May-
hew, as his interest may appear"—manifestly
appellee would have had no legal ground on which to
rest the assignment from Mayhew, or claim of subro-
gation, for under such a provision as appellant
requested attached to the policy a mortgagee could
not become the assignee of an insurance contract. The
legal effect of such a provision would be to make the

mortgagee the agent of the insured to receive the payment of the insurance money due under the policy to the extent that he (the mortgagee) is interested in the property destroyed. His right is no greater than that of the insured. What would prevent a recovery of the insurance by the insured would defeat recovery by the mortgagee. He stands in the shoes of the insured, and any defense available against the insured would be good as against him. As appellant requested and believed he was procuring an addition to his policy which would have made Mayhew merely his agent to receive payment of the insurance to the extent the latter was interested therein, and the law will treat as consummated that which the parties intended and contracted to do, and would have accomplished but for the mistake of appellee's agent, it logically results that the payment of the loss to Mayhew by appellee was a payment to appellant, the insured, the effect of which was to waive all defenses that might have been known to appellee at the time of payment. In addition, the payment operated to extinguish the mortgage debt and lien in favor of Mayhew to the extent that the sum paid would satisfy it, and also extinguished the liability of appellee to appellant. So the thing attempted to be assigned appellee was dead, the mere ghost of a debt or lien.

We think the view of the law here expressed is sustained by the following authorities: Bergman & Co. v. Con. Ins. Co., 12 Ky. Law Rep. 942; Continental Ins. Co. v. Hulman & Cox, 92 Ill. 145, 34 Am. Rep. 122; Kabrick v. State Ins. Co., 48 Mo. App. 393; Franklin Savings Institution v. Ins. Co., 119 Mass. 240; Perry v. Ins. Co., 61 N. Y. 214, 19 Am. Rep. 272.

However, the opinion of this court on the former appeal, which is in harmony with the cases cited, is

the law of this case, and it holds that the facts stated in the answer, if true, constitute a good defense to the cause of action set out in the petition, and we are convinced that the testimony taken after the return of the case to the lower court fairly sustains the averments of the answer

For the reasons indicated, the judgment, to the extent that it allows appellee a recovery against appellant, and subjects his land to the payment thereof, is reversed, and cause remanded, with directions to dismiss appellee's action, and for such further proceedings as to the balance of the Mayhew debt as may be consistent with the opinion.