## American Ins. Co. v. Combs et al.

Feb. 5, 1943.

M. C. Redwine and Frank M. Drake for appellant.

J. Smith Hays, J. Smith Hays, Jr., and William Hays for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On June 20, 1938, Mattie Tipton (a widow), conveyed to two of the defendants and appellees, Forest Williams and wife, lots 16 and 17 in block F of North Park addition to the city of Winchester, as shown by a recorded plat. The consideration was $500, which amount on that day was borrowed by Williams and wife from the Winchester bank, and for which they executed their joint note. The deed executed to the purchasers expressly stated that the paid consideration was made with borrowed funds from the Winchester bank and a lien was retained therein upon the lots in favor of the bank to secure the borrowed amount. On the same day Williams and wife procured from appellant and plaintiff below, the American Insurance Company, a fire policy

on the residence located on the purchased property in the sum of $800, the premium paid being $10.40, and the policy extending for one year following its date. On the same day, and as a part of the same insurance contract (and as a part consideration therefor) the insurer (appellant and plaintiff below) attached to the policy a "Rider" in favor of the bank, in protection of its lien, wherein plaintiff agreed to pay it in case of loss the amount of its indebtedness as a part of the full face amount of the policy, and in that agreement it was expressly stipulated, inter alia, in the "Rider" that in the event of loss and payment to plaintiff it (insurer) should be subrogated to the rights of the bank in and to the lien of the latter, and become entitled to an assignment to it of the note and the lien to secure it.

In October of the same year Williams and wife sold and conveyed the property to defendant and appellee, Eada Combs, and in the deed executed to her by her vendors she assumed the payment of the note held by the Winchester bank; but she took no assignment of the insurance policy from the Williamses to her. On January 24, 1939, the property was destroyed by fire. At that time the two insured owners under the policy had forfeited all their rights in the insurance contract under the stipulations contained therein, to the effect that if they parted with the title to the insured property before loss without the consent of the insurer (plaintiff) their rights in the policy became extinguished. However, the "Rider" executed by plaintiff in favor of the bank, stipulated—in addition to what we have already said—that no act of the insured owners of the property, whereby the policy became forfeited as to them, should affect the rights of the bank as to its insured lien. Therefore, the bank after the loss of the property by fire, collected from the plaintiff the amount of its debt, and upon payment thereof it assigned and transferred to plaintiff its note, and also the lien to secure it.

On November 20, 1940, plaintiff filed this action against the makers of the note (Williams and wife) and the vendee, defendant, Eada Combs—who had assumed the debt in the conveyance to her—seeking judgment against them for the amount of the note, interest and costs. In its petition plaintiff alleged the execution of the note by Williams and wife to the bank and the assumption of its payment by defendant, Eada Combs,

and that the note and lien had been assigned to it by the bank.

Defendants answered denying their liability for the indebtedness sued on, and alleged that it had been paid by plaintiff, whereby it was extinguished. By cross relief defendant, Combs, asked that the cloud upon her title, by reason of the incumbrance on it of the lien to the bank, be removed. Plaintiff demurred to that pleading, and without waiving it filed reply to the counterclaim asserted by defendant, Combs, in her answer. In its reply it averred the facts we have hereinbefore recited. Defendants demurred thereto, which the court sustained, and plaintiff declining to plead further, the petition was dismissed, from which it prosecutes this appeal.

There is considerable conflict in the judicially declared law as to the right of subrogation of an insurer to those possessed by the insured on payment of the loss insured against, and some courts make a distinction between the right of subrogation arising out of contract relations, and those arising from torts committed by strangers to the insurance contract. The latter is nonexistent in this case, and for which reason subrogation rights arising from tort actions will not be discussed.

Where the right of subrogation of an insurer growing out of contractual relations is involved there appears to be no conflicting decisions as to the right of subrogation as based upon the facts (and admitted by the demurrer of defendants) as pleaded by plaintiff, but to which the court sustained defendants' demurrer. The decisions based upon such facts appear to be unanimous to the effect that such contractual right of subrogation by the insurer will be upheld and enforced, whatever may be its rights where no contract for subrogation exists, other than to pay the lien holder the amount of his or its debt. But even though no specific contractual rights of subrogation exist, the right thereto will be enforced in favor of the insurer under general language to that effect where the insured mortgagor "has forfeited the insurance so far as his own interest is concerned, leaving the mortgagee as the sole insured." 29 Am. Jur. 1011, section 1352; annotations in L. R. A. 1916A, 561; Ann. Cas. 1917B, 1138; Aetna Fire Insurance Company v. Tyler, 16 Wend., N. Y., 385, 30 Am. Dec. 90, and annotations in 52 A. L. R. 282.

In the same volume of the cited text authority, page 1012, section 1353, it is said: "A clause in an insurance policy subrogating the insurer to the rights of the mortgagee on a payment of the loss to him to the extent of his debt will be enforced, although such a provision is not regarded as having the effect of rendering the insurer a surety for the mortgage debt. The insurer's right to subrogation under such a clause is limited by the mortgagee's rights to enforce the mortgage."

But counsel for defendants and appellees contend that the rule announced in the quoted text has application only under the provisions of a "Standard Mortgage Clause," specifically stipulating the rights and privileges of the insurer who pays the loss sustained to a lien holder of the destroyed property. When, however, there is no such Standard Mortgage Clause, and when it is only agreed in the policy that payment shall be made to a designated lien holder "so far as his or its interest may appear," the doctrine of the inserted text where there is no such clause would not apply in favor of the insurer, and the case of Gardner v. Continental Insurance Company, 115 Ky. 832, 75 S. W. 283, is cited in support thereof. Counsel evidently made a mistake in the citation of his supporting authority, since on page 832 of the cited volume containing our opinions there appears the case of Exchange Bank of Kentucky v. Thomas, which has nothing whatever to do with the question here involved, but which concerns questions totally foreign to any we have in this case.

However, we do find that the Gardner case, to which reference is made by counsel appears to have been before this court on two appeals—one reported in 75 S. W. 283, 25 K. L. R. 426, and the other one in 125 Ky. 464, 101 S. W. 908. The excerpt copied in counsel's brief appearing in our opinion reported in the 25 K. L. R. opinion, and also in the later one reported in 125 Kentucky. The sued defendants in that case expressly pleaded that the "Standard Mortgage Clause" attached to the involved policy was so attached through oversight or mistake, and they sought to reform it so as to conform with the alleged agreement of the parties that it was intended to provide for only the protection of the mortgagees' interest, and which class of such clauses contain no qualifying stipulation or obligations relating to the rights that the insurer might have as against the insured

under provisions for assignments made to it by the lien holder. The court, in the Gardner case, held that the proof sustained the contention of defendants of oversight or mistake and reformed the policy so as to conform with that contention, and then enforced it as so reformed. But in each of those opinions it was plainly manifested that if the actual contract was for the attachment to the policy of the Standard Mortgage Clause, then the insurer would be given the rights therein contained, and which is the case we have here.

Defendants in this case pleaded no mistake as to the character of "Rider" indemnity for the benefit of the lien holder on the property; nor did they make any attack in their pleading on the contents of the attached "Rider" in favor of the Winchester bank. Therefore, a part of the consideration for plaintiff's agreement contained in the "Rider" in favor of the Winchester bank was that the latter would transfer and assign to plaintiff all of its claims and security held by it against the insured. In such cases the courts everywhere appear to have held, as we have seen, that such an agreement is lawful and may be enforced, and which this court upheld under similar facts in the case of Springfield Fire & Marine Insurance Company v. Huntington National Bank, 229 Ky. 674, 17 S. W. (2d) 726, 71 A. L. R. 70. In an endeavor to escape their failure in their answer to seek reformation of, or to rely on the alleged oversight or mistake, their counsel argue that the pleadings and the exhibit filed therewith plainly manifest such mistakes relating to the character of "Rider" in favor of the bank that should have been attached to the policy. But we have examined the pleadings and the exhibits and we have found no foundation for attributing to them any such evidential effect. If, however, such fact were so evidenced then defendants could not rely on it because no such issue was made by their answer, and, therefore, plaintiff's right as against them must, under the authorities supra, be determined by the recited contents of the involved "Rider" attached to the policy in this case. Such authorities unanimously and without dissent sustain the right of the insurer to all of the privileges accorded him as set out in the "Rider," and which legal effect is nothing more nor less than its contractual right of subrogation in its favor.

Summarizing, our conclusions—supported by both

logic and the authorities supra—are: (a) Williams and wife, under the terms of the policy became divested of all beneficial interest in it upon parting with the title to the insured property and conveying it to Eada Combs; (b) that the latter acquired no beneficial interest or any rights issuing from the policy, since she neither demanded nor obtained a transfer of it to her, and (c) that after such elimination of beneficial interests the obligation of plaintiff to pay the bank (as lien holder) its debt, was governed entirely by the contents of the ''Rider'' prescribing and fixing the basis upon which it was issued. Since, therefore, it prescribed for contractual subrogation of plaintiff to the bank's rights, the appellees have no cause for complaint.

It follows that the order sustaining the demurrer to plaintiff's reply was and is erroneous, and for which reason the judgment is reversed, with directions to set it aside, and to overrule the demurrer which the court sustained, and for proceedings consistent with this opinion; the whole Court sitting.